862 A.2d 551 (2004)
373 N.J. Super. 464
Robert STOREY, Plaintiff-Appellant,
v.
Roseann STOREY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 2004.
Decided December 15, 2004.
*553 Robert B. Woods, Monmouth Beach, argued the cause for appellant.
Brenda M. Helt, Holmdel, argued the cause for respondent.
Before Judges SKILLMAN,[1] COLLESTER and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
Plaintiff Robert Storey appeals from a post-judgment order entered after remand for "a plenary hearing to permit him to attempt to establish changed circumstances warranting modification or outright termination of alimony." Storey v. Storey, No. A-3782-01 (App. Div. April 11, 2003) (slip op. at 9). Mr. Storey was earning $111,000 per year as a computer hardware specialist when he lost his job due to a reduction in force. One month later he decided to become a massage therapist, and he now earns $300 per week. The trial judge imputed to Mr. Storey earnings of $60,000, based on prevailing wages for computer service technicians, and reduced his alimony obligation from $480 to $280 per week. Mr. Storey argues that because he lost his job due to a reduction in force, his alimony obligation must be based on his present not imputed earnings.
We disagree and hold that in order to obtain a reduction in alimony based on current earnings, an obligor who has selected a new, less lucrative career must establish that the benefits he or she derives from the career change substantially outweigh the disadvantages to the supported spouse. Absent that showing, a judge should deny the motion, in effect imputing prior earnings, unless the obligor establishes, in the alternative, that his capacity to earn is diminished, in which case the judge should impute earnings consistent with the obligor's capacity to earn in light of the obligor's background and experience. The burden of persuasion is on the obligor.
In evaluating applications to modify support based on a substantial change in circumstances, Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980); N.J.S.A. 2A:34-23, this court has rejected "bright line" standards that base modification solely on "voluntariness," "fault," or "good faith," which we have described as having "the virtue of simplicity but little else." Deegan v. Deegan, 254 N.J.Super. 350, 355-57, 603 A.2d 542 (App.Div.1992); see also Kuron v. Hamilton, 331 N.J.Super. 561, 570-71, 752 A.2d 752 (App.Div.2000). Instead, consistent with statutory mandate, the court has developed standards that require a broad focus on the "circumstances of the parties and the nature of the case" so as to set an alimony amount that is "fit, reasonable and just." N.J.S.A. 2A:34-23.
When an alimony obligor changes career, the obligor is not free to disregard *554 the pre-existing duty to provide support. See Deegan, supra, 254 N.J.Super. at 358-59, 603 A.2d 542. The prior support obligation is a circumstance relevant to support that is "fit, reasonable and just." N.J.S.A. 2A:34-23. In Deegan, this court confronted "the question of what standard should apply in determining whether unanticipated early retirement, or any other voluntary life style alteration, constitutes a change in circumstances warranting a support modification...." Deegan, supra, 254 N.J.Super. at 352, 603 A.2d 542 (emphasis added). The Deegan standard requires courts to determine whether the obligor's decision is "reasonable" under the circumstances and, ultimately, whether the advantages to the supporting spouse "substantially outweigh" the disadvantages to the supported spouse. Id. at 357-58, 603 A.2d 542.[2]Deegan involved an application for modification based on early retirement, and, as Deegan suggests, it is appropriate to apply the same standard in a case involving a change in career. Id. at 352, 603 A.2d 542. Both cases require a balancing of the obligor's interest in the change and the supported spouse's interest in maintaining the standard of living the alimony award allows.
The Legislature has left applications to modify alimony to the broad discretion of trial judges. N.J.S.A. 2A:34-23; see Innes v. Innes, 117 N.J. 496, 504, 569 A.2d 770 (1990). Deegan identifies factors to guide the exercise of discretion in evaluating the "reasonableness" and "relative advantages" of an early retirement. Deegan, supra, 254 N.J.Super. at 356-57, 603 A.2d 542. Those factors are: the reasons for retirement (motive); the age and health of the party; the ability to pay and need for support; and the timing of the retirement (including the opportunity for the supporting spouse to prepare for the change). Ibid.
The factors relevant to the reasonableness and relative advantages of a career change are substantially similar to those relevant to early retirement. Those factors include: the reasons for the career change (both the reasons for leaving prior employment and the reasons for selecting the new job); disparity between prior and present earnings; efforts to find work at comparable pay; the extent to which the new career draws or builds upon education, skills and experience; the availability of work; the extent to which the new career offers opportunities for enhanced earnings in the future; age and health; and the former spouse's need for support. See N.J.S.A. 2A:34-23b(1) (need and ability to pay), (3) (age, physical and emotional health), (4) (marital standard of living), (5) (earning capacities, educational levels, vocational skills and employability), (7) (parental responsibility for children). The list is not exhaustive. N.J.S.A. 2A:34-23b(13) (directing courts to consider any other factors deemed relevant).
In evaluating reasons and balancing relative advantages, courts should be guided by the factors the Legislature has identified as relevant to alimony. See N.J.S.A. 2A:34-23b(1) to -23b(13). A focus on the statutory criteria will guide the exercise of discretion and promote predictability in decision making. Reasons such as lack of work in one's field, health condition, the need to care for a child and loss of professional license are related to ability *555 to obtain or perform work in the prior field and are entitled to significant weight. N.J.S.A. 2A:34-23b(3), (5), (7); see, e.g., Kuron, supra, 331 N.J.Super. at 570, 752 A.2d 752 (loss of professional license); Golian v. Golian, 344 N.J.Super. 337, 341, 781 A.2d 1112 (App.Div.2001) (disability); Deegan, supra, 254 N.J.Super. at 358, 603 A.2d 542 (referencing health); Mowery v. Mowery, 38 N.J.Super. 92, 102, 118 A.2d 49 (App.Div.1955) (demand for labor), certif. denied, 20 N.J. 307, 119 A.2d 791 (1956); Caplan v. Caplan, 364 N.J.Super. 68, 90, 834 A.2d 459 (App.Div.2003) (obligation to care for a special needs child). In contrast, reasons such as a desire for a less demanding lifestyle, a new relationship or better working conditions, while rational and entitled to consideration as the trial judge deems appropriate, N.J.S.A. 2A:34-23b(13), are entitled to less weight, because those reasons are not statutorily recognized. See N.J.S.A. 2A:34-23b. Where the reason is acquisition of education, training or experience substantially likely to enhance future earnings, the supported spouse's ability to postpone or forego support for a defined period in the interest of enhanced alimony or child support in the future, and the obligor's ability to compensate for lost income by temporarily adjusting his or her lifestyle should be considered in balancing relative advantages. See N.J.S.A. 2A:34-23b(8) (education and training to enhance earning capacity); Crews v. Crews, 164 N.J. 11, 751 A.2d 524 (2000) (increase in alimony); Isaacson v. Isaacson, 348 N.J.Super. 560, 792 A.2d 525 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002) (increase in child support). Similarly, where the reason is a relocation to permit pursuit of a new relationship, the third party's ability to move may be relevant to the balance of advantages. Cf. Baures v. Lewis, 167 N.J. 91, 116, 770 A.2d 214 (2001) (discussing consideration of ability to relocate in the context of custody).
In the end, the competing interests implicated by a career change resulting in reduced income cannot be resolved by simply inquiring whether the precipitating event was "voluntary" or "involuntary," and then relying on present income if "involuntary." Elimination of an alimony obligation is not the "silver lining" in every "cloud" of involuntary termination. Each case requires a careful evaluation of "reasonableness" and "relative advantages" under the totality of the circumstances.
To clarify and illustrate the point, we distinguish Dorfman v. Dorfman, 315 N.J.Super. 511, 719 A.2d 178 (App.Div.1998), a case in which an accountant, following termination by his firm, accepted lower paying work as an accountant after a concerted effort to find the same work at comparable pay. An obligor who makes that showing demonstrates that he or she is working at capacity in employment consistent with skills and experience; stated differently, that obligor establishes that he or she is not voluntarily underemployed in the new job. Id. at 516-17, 719 A.2d 178 (proofs established a prima facie case for modification). In such cases, absent evidence undermining the supporting spouse's proofs, there is no need for further inquiry and alimony should be recalculated based on current financial circumstances. This conclusion is mandated by a well-established principle, i.e., support orders are based on the obligor's ability to pay. See Bonanno v. Bonanno, 4 N.J. 268, 275, 72 A.2d 318 (1950); Caplan, supra, 364 N.J.Super. at 88-89, 834 A.2d 459 (App.Div.2003). In contrast, where a layoff is followed by a shift to a job that does not draw on prior skills and experience, the obligor must explain that choice with reference to other options explored and efforts to find work with comparable pay. *556 See, e.g., Grimes v. Grimes, 408 Pa.Super. 158, 596 A.2d 240, 242-43 (1991) (accepting as valid the obligor's desire to leave dangerous work in the coal mines, the court found no adequate explanation of efforts to find work at comparable pay before selecting work at one-half prior earnings). It is not enough to show some job, any job.
Because Mr. Storey objects to the trial judge's imputation of income based on prevailing wages in his prior field, it is necessary to address principles governing imputation. We start by recognizing that the obligor has the burden of persuasion on an application to reduce support. Golian, supra, 344 N.J.Super. at 341, 781 A.2d 1112; Deegan, supra, 254 N.J.Super. at 354, 358, 603 A.2d 542. Under the Deegan standard, which applies here, an application is denied if the applicant fails to carry the burden of proof on reasonableness and relative advantages. Id. at 358, 603 A.2d 542. As a practical matter, the denial of relief results in imputation of prior earnings. Stated differently, the applicant fails to establish that he or she is not voluntarily underemployed, and the trial judge properly imputes prior earnings, which are evident of capacity to earn. See, e.g., Gertcher v. Gertcher, 262 N.J.Super. 176, 177, 620 A.2d 454 (Ch.Div.1992).
An obligor, however, need not present an all or nothing case, and the court's decision need not be reduced to an unreasonable choice between prior and present earnings. Thus, the supporting spouse is not foreclosed from establishing that, even if the benefits he or she derives from the career change do not substantially outweigh the disadvantages, prior earnings are no longer the proper benchmark for his or her capacity to earn or, stated differently, the proper measure of the extent of his or her underemployment. As noted above, capacity to earn is determinative. Bonanno, supra, 4 N.J. at 275, 72 A.2d 318. For example, where the evidence supports a finding that wages for persons with the obligor's background and experience have declined, imputation based on current prevailing wages is consistent with the rationale of Deegan and Kuron and with statutory law, N.J.S.A. 2A:34-23b(5), all of which reject simplistic solutions to the complex problems presented by post-divorce changes in circumstance.
A supported spouse need not identify a better paying job that is available to the obligor as a precondition to imputation on the obligor's application for reduction. Rather, the obligor must establish that he or she is earning at capacity, i.e., not underemployed, in order to avoid imputation. While Dorfman makes it clear that imputation is improper absent a finding that the obligor is failing to earn at capacity (i.e., unless the party is intentionally unemployed or underemployed), it does not hold that the supported spouse must establish that underemployment or that the obligor prevails by simply establishing that he or she has found a job. 315 N.J.Super. at 516, 719 A.2d 178. To the contrary, the court found the obligor established a prima facie case of a substantial change in circumstance by evidence of unsuccessful efforts to find work at comparable pay, followed by acceptance of work in the same field at reduced pay. Id. at 517, 719 A.2d 178; see Lepis, supra, 83 N.J. at 151, 416 A.2d 45; Ozolins v. Ozolins, 308 N.J.Super. 243, 247, 705 A.2d 1230 (App.Div.1998) (considering access to evidence in allocating burden of proof); Grimes, supra, 596 A.2d at 242-43. An obligor who fails to present similarly persuasive evidence of earnings consistent with capacity faces imputation based on a realistic assessment of capacity to earn. Tash v. Tash, 353 N.J.Super. 94, 99-100, 801 A.2d 436 (App.Div.2002); Dorfman, *557 supra, 315 N.J.Super. at 516, 719 A.2d 178; see also Bonanno, supra, 4 N.J. at 275, 72 A.2d 318; Caplan, supra, 364 N.J.Super. at 88-89, 834 A.2d 459; A.N. v. S.M., 333 N.J.Super. 566, 578, 756 A.2d 625 (App.Div.2000).
Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability. Tash, supra, 353 N.J.Super. at 99, 801 A.2d 436. Rarely is there evidence that an obligor turned down an offer of employment at a fixed amount, and proof of that or similar certainty is not a prerequisite to imputation. A trial judge's decision to impute income of a specified amount will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence. Tash, supra, 353 N.J.Super. at 99, 801 A.2d 436; Rolnick v. Rolnick, 262 N.J.Super. 343, 359-60, 621 A.2d 37 (App.Div.1993); see also Saleem v. Saleem, 26 Va.App. 384, 494 S.E.2d 883, 887 (1998) (imputation is upheld unless plainly wrong). Competent evidence includes data on prevailing wages from sources subject to judicial notice. N.J.R.E. 201; Child Support Guidelines, Pressler, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at 2146, ¶ 12 (2004) (discussing imputation based on data reported by the New Jersey Department of Labor where child support is at issue).
Reviewing the evidence in this case under these standards, we conclude that Mr. Storey did not establish that his career choice was reasonable. When the Storeys were divorced in 1999, Mr. Storey was earning approximately $111,000 per year working for Bell Communications Research (Bellcore), through a contract with C.C.M. Consulting. Mrs. Storey was working part-time and earning seven dollars per hour for twelve to fifteen hours of work per week. The parties agreed to alimony in the amount of $480 per week, and that agreement was incorporated in their judgment of divorce.
Circumstances changed. In June 2001 rumors of layoffs at Bellcore circulated and Mr. Storey told his former wife. On August 7 he was given notice that August 17 would be his last day of work. On August 19, without asking his consulting firm about other job opportunities, he moved to Florida to join a woman whom he had met in 1999 and with whom he had developed a relationship. He had no prospects for employment in Florida when he moved, and his prior efforts to obtain work there had not been productive. Several months before he moved, however, he obtained a Florida driver's license and post office box. He pays rent to his friend, is working as a massage therapist and claims to earn $300 per week (his proof of earnings in his present placement with a chiropractor was quite slim, a copy of the face of one check). He applied for training in massage therapy and for a reduction in alimony only one month after his arrival in Florida.
Mr. Storey has an extensive background in and experience with electronics and hardware used in business and communications. When he left Bellcore he was a 50 year old high school graduate with 30 years of experience in servicing, maintaining and configuring hardware used in business and communications. He entered the field after high school, when he joined the Air Force and received training in electronics and experience working on cryptographic equipment. When he left the Air Force four years later, he put this training to use in the private sector. He worked on first generation fax machines, then moved to equipment used with cassette decks and finally to computer hardware. Throughout his career he apparently *558 adapted his skills to ever-changing technologies. He produced a letter of recommendation from Bellcore praising his performance; at Bellcore he worked in the laboratory, where he was responsible for maintaining, configuring and reconfiguring laboratory hardware to meet the needs of employees who were developing and testing new software and working in the new area of "voice over" technology and the cable connections between personal computers and the internet it requires.
Given Mr. Storey's background and experience, his explanation for his dramatic shift to a career in massage therapy was at best scant, and if there was a rational reason for the selection, he did not provide it. According to Mr. Storey, when he was unable to find a job in his own field, he selected massage therapy because Florida's Hillsborough County Employment Training Division gave him a list of "current demand training areas" that included massage therapy. He selected it for that reason and because the agency would pay for the training, a claim which the trial judge noted conflicted with a prior certification. He expressed no other rational reason for his interest in this field, for which he had no qualifications. He claimed he did not know what to expect in the way of earnings but thought massage therapy would be a good field because Florida is both a resort area and a place where retired people make their home. In short, his reason for selecting massage therapy amounted to little more than the fact that massage therapy was on the agency's list.
Mr. Storey did not offer any credible reason for declining to investigate or even inquire about other areas of employment included on the Hillsborough County list. He did not inquire about openings in "business machine technology," which was on the list. He "figured" the "tech industry" was depressed and that today's business machines are "throwaway stuff." He did not explain why he was willing to rely on the agency's view of job availability in massage therapy but unwilling to investigate opportunities in "business machine technology."
The only evidence Mr. Storey introduced, in addition to his vague reasons for selecting massage therapy, was related to his unsuccessful efforts to obtain a job comparable to the one he held at Bellcore. When he heard rumors about impending layoffs, he asked technicians and sales representatives from leading companies, whom he encountered in his work at Bellcore, to let him know if they heard about any jobs. He also contacted companies that used his former employer's computer equipment, sent resumes to major companies, and posted his resume on websites. He never contacted the consulting firm through which he worked for Bellcore or retained a headhunter or reviewed help wanted ads. As Mr. Storey explained it, he does not buy newspapers and headhunters charge a fee. He looked at ads in one technical journal. He did not produce a copy of his resume. He explored no other career alternative, even though he expected his income would not allow him to meet his support obligation.
Mrs. Storey's circumstances at the time of the hearing were dire. Mr. Storey owed her $44,640 in past due alimony, and she had filed for bankruptcy. She was working full-time at a car dealership and earning approximately $17,000 per year.
Mr. Storey was doing better than his former wife, despite the reduced earnings he reported. His Case Information Statement did not reflect any significant debt.
The trial judge found that Mr. Storey lost his job due to a reduction in force and a downturn in the computer industry. He *559 concluded, however, that plaintiff was voluntarily underemployed as a massage therapist, and based on that finding denied his request to terminate alimony in light of his current earnings. In evaluating the evidence, the judge applied the standards established in Deegan and Kuron, as this court directed in its decision remanding the matter, Storey v. Storey, No. A-3782-01 (App. Div. April 11, 2003) (slip op. at 5-8).
The judge did not credit Mr. Storey's testimony about his "professed interest" in and efforts to find work in his field, and on that basis and on the ground that Mr. Storey did not explore jobs that would draw on his impressive background, the judge concluded that he did not establish that he was unable to obtain employment in his field. In rejecting the testimony about and evidence of job search, the judge considered that Mr. Storey did not produce the resume he claimed to have posted on the internet, did not answer newspaper ads, did not search technical journals, did not consult an employment agency or contact his consulting firm about opportunities after Bellcore, and did not inquire about employment more closely aligned with his experience and skills before pursuing a career in massage therapy, a career which neither drew on his background nor provided a reasonably comparable income.
The judge also considered the significant disadvantage Mr. Storey's career choice imposed on his former wife, termination of support, and the only apparent advantage to Mr. Storey, which was a relocation to Florida that allowed him to join his new friend. While evidence of an obligor's desire to relocate, whether to join a new friend or to enjoy a different climate, is not necessarily evidence of bad faith and should be considered N.J.S.A. 2A:34-23b(13), that advantage does not substantially outweigh the disadvantage Mr. Storey seeks to impose on his former spouse, which is termination of all support. See Deegan, supra, 254 N.J.Super. at 358-59, 603 A.2d 542 (discussing the question of limitations on freedom of choice); Becker, supra, 29 Conn. L.Rev. at 676-98 (discussing various reasons for career changes and citing cases).
A trial court's rulings on an application to modify alimony, including the decision to impute income, are discretionary rulings, and we do not overturn those determinations unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence. Tash, supra, 353 N.J.Super. at 99, 801 A.2d 436; Rolnick, supra, 262 N.J.Super. at 359-60, 621 A.2d 37. Credibility findings are given substantial weight and deference. Rolnick, supra, 262 N.J.Super. at 360, 621 A.2d 37. We see no reason to disturb the findings or conclusions in this case.
While plaintiff complains that the judge erred by taking judicial notice of prevailing wages for computer service technicians without prior notice to the parties, cf. N.J.R.E. 201(c), (e), he did not file a motion for reconsideration or otherwise seek an opportunity to be heard on the propriety of taking judicial notice. R. 4:49-2; N.J.R.E. 201(e). The better practice is to give prior notice, but if there was an error here, it redounded to plaintiff's benefit. The alternative was imputation of prior earnings, and defendant does not appeal.
We note, as we have in the past, see Tash, supra, 353 N.J.Super. at 99, 801 A.2d 436, the difficult position of a judge who is not presented with evidence needed to fairly resolve a dispute about support. An obligor who fails to provide the requisite evidence cannot sensibly claim error on the part of a trial judge who takes *560 judicial notice of wage data that works to the obligor's benefit. Here, Mr. Storey took an all or nothing position  prior earnings of $111,000 per year or present earnings of $300 per week. Given that he did not establish that his choice of career is reasonable or that the advantages to him substantially outweigh the disadvantages to his former wife, the judge's imputation of income based on prevailing wage data for work consistent with the judge's realistic assessment of Mr. Storey's skills and experience was neither arbitrary nor without evidential support.
Affirmed.
NOTES
[1] Judge Skillman did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] See Lewis Becker, Spousal and Child Support and the "Voluntary Reduction of Income", 29 Conn. L.Rev. 647, 670, 673 (1997) (describing various standards courts have adopted to address an obligor's career choice that result in reduced income and characterizing the Deegan standard as an "intermediate" approach that best accommodates conflicting interests and that is protective of the support obligation).