**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3758-16T4

M.M.,

    Plaintiff-Respondent,

v.

J.M.,

    Defendant-Appellant.

_____

Submitted August 21, 2018 — Decided  August 24, 2018

Before Judges Messano and Geiger.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Sussex County,
Docket No. FM-19-0181-11.

J.M., appellant pro se.

M.M., respondent pro se.

PER CURIAM

Defendant J.M. appeals from that portion of a March 31, 2017 order denying his post-judgment motion to terminate alimony without prejudice.  For the following reasons, we vacate and remand.

Plaintiff M.M. and defendant were married on June 18, 1983. Three children were born of the marriage. After experiencing marital difficulties, the parties participated in mediation. On September 8, 2010, an unsigned written Memorandum of Understanding (MOU) reflecting certain agreements reached by them during mediation was prepared. The following month, the parties entered into a written Property Settlement Agreement (PSA) which appended the MOU as Exhibit A. Two days later, plaintiff filed for divorce. The parties were not represented by counsel in the divorce action. A final judgment of divorce (FJOD) was entered on January 3, 2011. The FJOD incorporated the terms of the PSA.

Pertinent to this appeal, the MOU states: "This document reflects certain agreements reached by the parties during mediation. The terms described in this memorandum shall not be binding until they are incorporated into a Settlement Agreement prepared by the parties' attorneys and signed by the parties." As to alimony, the MOU states:

> 19. Alimony:
>
> A. Beginning upon the closing of title on the marital home, [J.M.] will pay [M.M.] permanent alimony in the amount of $100 per week. Alimony shall be payable through Family Support Services. The alimony and child support agreements set forth herein are based on [J.M.'s] current income of approximately $72,000 per annum and [M.M.'s] income of $57,000 per annum.

> B. Alimony shall be taxable to [M.M.] and tax deductible by [J.M.]. <u>Alimony shall terminate upon either party's death or [M.M.'s] remarriage.</u> [M.M.'s] cohabitation with an unrelated adult in a relationship tantamount to marriage shall be a re-evaluation event allowing [J.M.] the right to seek a review of alimony.
>
> [(emphasis added).]

In turn, the PSA states:

> WHEREAS, the Husband and Wife are desirous of settling the questions of custody, visitation, alimony, child support, equitable distribution, sale of the marital residence and costs if any, and all other matters arising out of the marital relationship; the intention being that their future relations <u>shall be governed and fully prescribed by the terms of this Settlement Agreement and Memorandum of Understanding</u> prepared by Divorce Mediator, Amy Z. Shimalla, Esq.; <u>attached hereto as Exhibit A</u> . . . [.]
>
> [(emphasis added).]

The PSA also contains the following specific language regarding alimony:

> 8.1 Pursuant to N.J.S.A. 2A:34-23, the parties have considered the factors with respect to spousal maintenance ("alimony"), including the standard of living during the marriage. The Husband shall pay the Wife as unallocated, tax-free alimony, the total monthly sum of $100 per week <u>pursuant to the Memorandum of Understanding dated September 8, 2010</u> commencing upon the sale of the marital residence. A copy of the Memorandum of Understanding is attached hereto as Exhibit A. Said alimony amount shall be adjusted

3

> every two (2) years to reflect the cost of living. The alimony shall be paid directly to the Family Support Services until the happening of the first of the following:
>
> > (a) death of Husband;
> >
> > (b) death of Wife;
> >
> > (c) the child attaining the age of 18, unless the child is still enrolled in an undergraduate program of higher education or vocational school after attaining the age of 18, in which event the child shall be deemed emancipated upon the earlier of (A) attaining age 23, or (B) graduation from such program, if continued without unreasonable interruption.

[(emphasis added).]

On February 6, 2016, defendant moved to emancipate the parties' youngest daughter, effective October 21, 2016; require plaintiff to repay any child support overpayments made by defendant after October 21, 2016; terminate alimony; and award him counsel fees and costs for the motion. Plaintiff opposed the motion. The motion judge granted defendant's application to emancipate their youngest daughter effective October 21, 2016, but denied the remaining aspects of his motion without prejudice. This appeal is limited to the denial of defendant's application to terminate alimony. Plaintiff did not file a cross-appeal.

A-3758-16T4

In his oral decision, the motion judge stated the following basis for denying defendant's motion to terminate alimony without prejudice:

> Defendant further requests termination of alimony. But he cites no basis for his requests. While he attached the PSA, the plaintiff properly notes that he failed to attach the entire PSA including specifically the memorandum of understanding that is incorporated therein by reference within Section 8 of the PSA. Section 8 of the PSA and memorandum of understanding clearly indicate that the parties agree that alimony was intended to be permanent. And that the Court will not disturb that agreement between the parties.
>
> Curiously, within his reply certification the defendant fails to address his request for termination of alimony or his omission of the memorandum of understanding from his motion. Defendant[']s omission and failure to explain or justify his request clearly makes the Court question whether the defendant's request was brought in good faith.

In a supplemental written statement of reasons, the motion judge reiterated the same reasoning. This appeal followed.

Defendant contends the trial court erred in not terminating his alimony obligation. He argues that Paragraph 8.1 of the PSA expressly provides for the termination of alimony upon their youngest child attaining the age of eighteen, or if enrolled in higher education or vocational school, upon the earlier of the child attaining age 23 or graduating from such program. He notes

this language is identical to the child support termination language contained in Paragraph 9.1 of the PSA. Although recognizing the MOU states that alimony is permanent, he asserts "the PSA, a subsequent and more comprehensive document than the MOU does NOT state that alimony is permanent and added alimony termination language, that alimony would terminate upon emancipation of the child." Defendant argues "[t]he additional alimony termination language of the PSA takes precedence over the MOU."

Plaintiff argues the terms and provisions of the MOU were incorporated into the PSA and, consequently, "[t]he MOU is not a stand-alone, separate document that should be superseded as [defendant] alleges." Plaintiff notes that in her divorce complaint, she demanded an award of permanent alimony pursuant to the PSA and the MOU attached thereto as Exhibit A.

Plaintiff notes defendant did not allege any reduction in income or change in circumstances other than the age and emancipation of their youngest daughter. She also notes defendant filed a procedurally and substantively deficient Case Information Statement (CIS).

Neither party indicated whether any additional negotiations regarding alimony took place between the mediation and the preparation of the PSA. Nor does the record reflect who prepared

the PSA, much less contain an affidavit or certification of the preparer.

Our review of a Family Part's order is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We review decisions granting or denying applications to modify or terminate alimony for an abuse of discretion. Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004). "[W]e do not overturn those determinations unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence. Ibid. (citing Tash v. Tash, 353 N.J. Super. 94, 99 (App. Div. 2002); Rolnick v. Rolnick, 262 N.J. Super. 343, 359-60 (App. Div. 1993)). However, construction of the terms of a contract is a question of law "subject to de novo review by an appellate court. "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (citations omitted).

The "polestar" of contract interpretation is "the intention of the parties . . . as revealed by the language used, taken as an entirety." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953). See also Jacobs v. Great Pac. Century Corp, 104 N.J. 580, 582 (1986). To discover the intention of the parties, and to determine whether a contract is ambiguous, courts may consider

extrinsic evidence offered in support of conflicting interpretations. Conway v. 287 Corporate Ctr. Ass'n, 187 N.J. 259, 268-69 (2006). "Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." Teamsters Indus. Emp. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993). See also Restatement (Second) of Contracts § 214(c) (Am. Law Inst. 1981) ("Negotiations prior to . . . adoption of a writing are admissible in evidence to establish . . . the meaning of the writing, whether or not integrated").

A contract is ambiguous if it is susceptible to two reasonable alternative interpretations. Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). Resolution of ambiguity, if found, is a fact issue. Michaels v. Brookchester, Inc., 26 N.J. 379, 388 (1958). As we have repeatedly emphasized, motion judges must not "resolve material factual disputes upon conflicting affidavits and certifications." Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995) (citations omitted). However, a plenary hearing is required to resolve an ambiguous contract only if, after considering all relevant materials, a genuine issue of fact remains. See Teamsters Indus. Emp. Welfare Fund, 989 F.2d at 135-137.

The motion judge concluded the MOU and PSA "clearly indicate that the parties agree that alimony was intended to be permanent." We disagree. The conflicting language of the MOU and PSA created an ambiguity which required the court to determine the parties' intent regarding whether the alimony was permanent or could be terminated upon the occurrence of specified events. Resolution of that issue could not be accomplished by merely examining the conflicting language of the documents. Instead, determination of whether additional negotiations after the mediation lead to an agreement for the termination as set forth in paragraph 8.1(c) is critical to resolving the ambiguity.

Based on this record, we are unable to determine the intent of the parties regarding the permanency or termination of alimony. We vacate the denial of defendant's motion to terminate alimony and remand for further proceedings consistent with this opinion. Those proceedings should focus on whether the parties engaged in additional alimony negotiations after the mediation, and if so, the results of that negotiation, and if not, whether the inclusion of paragraph 8.1(c) was a mere scrivener's error.[1] We leave it to the sound discretion of the remand court to determine if discovery

---

[1] We note paragraph 8.1(c) is identical to the language of paragraph 9.1(j) regarding termination of child support due to emancipation.

A-3758-16T4

should be permitted and whether a plenary hearing is necessary. See Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012) (citations omitted).

We recognize defendant did not provide evidence regarding the intention of the parties in agreeing to the conflicting alimony provisions in the MOU and PSA. Nor did he make a prima facie showing of changed financial circumstances. Nonetheless, the emancipation triggers termination of alimony if paragraph 8.1(c) is enforceable. Thus, the ambiguity of the contractual terms presents a factual issue warranting further proceedings to determine the parties' intent.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3758-16T4