**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3324-16T2

CAMILE COLARUSSO,

 Plaintiff-Appellant,

v.

DAVID COLARUSSO,

 Defendant-Respondent.

_____

   Submitted September 12, 2018 – Decided October 1, 2018

   Before Judges Fasciale and Rose.

   On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0308-15.

   Callagy Law, attorneys for appellant (Brian P. McCann, on the briefs).

   David Colarusso, respondent pro se.

PER CURIAM

   Plaintiff Camile Colarusso appeals from a March 2, 2017 dual judgment of divorce following a twelve-day trial in the Family Part. Plaintiff argues the

trial judge erred by: (1) denying her application to call the court-appointed forensic accountant and her own independent expert as witnesses; (2) denying her request for an adjournment to retain new counsel when her attorney was relieved on the day of trial; (3) imputing income to defendant David Colarusso, resulting in an insufficient alimony award; (4) failing to compel defendant to pay their adult children's expenses; and (5) denying her counsel fees. Having considered plaintiff's contentions in light of the applicable law, we affirm substantially for the reasons set forth in the trial judge's thorough written opinion.

I.

We discern the relevant facts and procedural history from the record. The parties were married in October 1989. Three children were born of the marriage: M.C., born in February 1990, D.C., born in January 1993, and N.C., who died during the marriage. In 1998, the parties jointly purchased a residence in Allendale. For most of the marriage, plaintiff owned and worked as a hair stylist in her own salon, and defendant was employed as a chiropractor in his own practice.

Plaintiff filed a complaint for divorce in July 2014. Four months later, defendant vacated the former marital home. In July 2015, the parties executed

2

a consent order, obligating defendant to pay nearly $5,000 in pendente lite support, including $450 per month in cash. In January 2016, plaintiff filed an amended complaint for divorce, which included an irreconcilable differences count and Tevis claims.[1] Defendant filed answers to the complaint and amended complaint, respectively, contesting the allegations, and seeking a judgment of divorce and related relief.

During the contentious, protracted pretrial proceedings that followed, the judge conducted numerous case management conferences, and appointed two joint forensic accounting experts, a discovery master "to monitor [the ex]change of discovery . . . and requests of the forensic accountant," and a mediator to facilitate settlement. In June 2016, the judge scheduled a firm trial date for plaintiff's Tevis claims on four consecutive days in October 2016. By correspondence dated September 15, 2016, the judge rescheduled trial for November 1, 2, and 3, 2016, and advised the parties that the matrimonial action would proceed before the Tevis claims.

---

[1] See Tevis v. Tevis, 79 N.J. 422, 433-34 (1979) (recognizing that the single controversy doctrine requires marital tort claims to be alleged in conjunction with the divorce action).

Plaintiff retained four law firms to represent her during the litigation. On October 6, 2016, a fifth law firm attempted to file a substitution of counsel and request an adjournment of the November 1, 2016 trial. The judge refused to accept the substitution, deeming it "in derogation of the Court Rules."[2] On October 11, 2016, the fifth law firm filed an order to show cause to substitute as counsel, but plaintiff withdrew that application "believing it was in her best interest to proceed with current counsel as an adjournment of the trial would not be granted."[3]

On October 28, 2016, plaintiff's fourth attorney filed a motion on short notice to be relieved as counsel. In granting the application, the trial judge conducted a hearing under seal, in the presence of the parties, and considered the certification of counsel citing "an irreparable breakdown of the relationship between [plaintiff and counsel's firm]" including veiled threats, and accusations that counsel "had removed documents ultimately submitted to the [c]ourt." The

---

[2] See R. 5:3-5(e)(2) (permitting withdrawal of counsel within ninety days of a scheduled trial date "only by leave of court, on motion with notice to all parties.").

[3] The October 11, 2016 order contained in plaintiff's appendix indicates the application was denied. Plaintiff did not appeal from the October 11 order, and did not provide us with the transcript of that proceeding. Nonetheless, her merits brief indicates the application was withdrawn.

judge then denied plaintiff's request for an adjournment to retain substitute counsel, reasoning:

> This case has gone through every court process that we have. It's going through motion practice. It's gone through mediation. [The parties] had a Discovery Master, . . . which is something that only happens in rare situations. So [they] had the benefit of that process. [They] had early settlement panel, and [they have] had mediation. This case has gone through every court, we've exhausted every avenue. It is time. It is 800 something days old. It's one of the oldest cases in the county.
>
> . . . .
>
> I booked three solid [consecutive trial] days [at the request of plaintiff's counsel prior to her withdrawal]. I was implored by everyone to clear my schedule for this case, and I have done that. And I am not granting another adjournment. You have three days [i.e.,] today, tomorrow and Thursday.
>
> . . . .
>
> [Another attorney] . . . filed an Emergency Order to Show Cause [on behalf of plaintiff] . . . about a month ago to come into the case. [H]ad that been granted at that time, [plaintiff] would have had a month to get new counsel transitioned into [this matter]. I was ready to rule on that [application]. I believe it was scheduled for a Friday afternoon [in] early October. And then that was withdrawn . . . .
>
> I have a box of documents that were submitted on [plaintiff's] behalf, as well as a trial brief. I have a trial

brief from [defendant]. And we're going to begin the trial.

The judge thereafter conducted a trial on six days in November 2016 and six days in January 2017. Neither party was represented by counsel. The judge heard testimony exclusively from both parties concerning their marital history, their work and earnings history, their economic circumstances, and their standard of living during the marriage. The court also considered the voluminous exhibits entered in evidence. Having admitted in evidence the reports of the parties' joint accounting expert, Mark Koenig, the court denied plaintiff's application to call Koenig as a witness. The court also denied plaintiff's request during trial to call Collen Gaskin as her own accounting expert because that witness was not named in discovery and, as such, had not prepared a report. The court however, afforded plaintiff wide latitude to confer with Gaskin during trial breaks. After considering the testimony of both parties and the documentary evidence, Judge Lisa A. Firko rendered a comprehensive twenty-three page written opinion on March 2, 2017.

In her findings and conclusions regarding equitable distribution, Judge Firko carefully considered each of the statutory factors set forth in N.J.S.A. 2A:34-23.1. Notably, the judge found, based on her "observation of the

6

demeanor of both parties during the trial; the caustic and hostile relationship between the parties; and the financial burdens on both parties, it is clear that a, 'divorce game[,]' is being played to maximize the outcome of the acrimonious litigation, by each party."

Pertinent to this appeal, Judge Firko made extensive findings concerning "[t]he income and earning capacity of each party" pursuant to N.J.S.A. 2A:34-23.1(g), and determined both parties were underemployed.  In doing so, the judge found plaintiff's testimony that, "[o]n, average she only works three . . . days per week because of the time limits imposed by this litigation[,]" was "disingenuous."  Further, as "a certified hair colorist [with] a certification to performing hair straightening (Keratin) treatments[, plaintiff] has specialized expertise in her field."  Based on Koenig's forensic accounting evaluation, the judge found plaintiff's business was worth $16,500 as of June 30, 2014.

Noting defendant also only works three days per week, the judge determined, "There is no reason why he should not be working full-time, or five . . . days per week.  Specifically, defendant did not offer "medical or other testimony or proofs . . . to explain why [he] is not working full time."  Pursuant to Koenig's forensic accounting evaluation, the judge valued defendant's business at $37,000.

Giving due consideration to "the long-term nature of the marriage; the dedication of each party to their respective businesses; and caregiving responsibilities both had for the children," the trial judge determined the parties were entitled to a thirty percent share of each other's business. The judge then calculated plaintiff's share of equitable distribution at $6,360, payable from defendant's share of the sale of the marital home.

Regarding alimony, Judge Firko gave due regard to the factors set forth in N.J.S.A. 2A:34-23(b). Notably, she deemed the testimony from both parties "unreliable and incredulous . . . as to their earning capacities." Having found that the trial record was devoid of evidence that either party is disabled or that their underemployment status is temporary, the judge imputed income to both parties based on the "New Jersey Department of Labor and Workforce Development-Occupational Wages" (NJDOL statistics) for hairstylists and chiropractors.

Noting the NJDOL statistics provide an annual average salary for hairstylists of $34,300 per year, or $660 per week, the judge accepted defendant's testimony that plaintiff "is savvy; has managed other services in her salon; and that she earns cash tips." The judge likewise accepted the NJDOL statistics setting an annual average salary for chiropractors at $127,000 per year,

or $2,440 per week. "In the interest of fairness, justice, and equity, the [c]ourt utilized the annual mean salary, for both parties, in order to be consistent." The judge then ordered defendant to pay plaintiff $500 per week as open durational alimony.

In denying the parties' requests for counsel fees and costs, the trial judge analyzed the factors set forth in Rule 5:3-5(c), Rule 4:42-9(a), and RPC 1.5(a), and recognized that plaintiff and defendant prevailed on part of the relief sought, and they were denied some of the relief sought. Emphasizing the lack of reasonableness and good faith of the positions advanced by the parties, pursuant to Rule 5:3-5(c)(3), the judge determined plaintiff's position in seeking defendant's financial support for the two "adult children who are in post-graduate programs and living independently" was "unreasonable" and "disingenuous." The court elaborated further:

> As duly noted by [defendant, plaintiff] persisted in requesting child support for [D.C.], who [plaintiff] claimed suffered a "traumatic brain injury in March 2013.["] This was an exaggeration. Pointedly, [defendant] represented that [D.C.] fell and sustained a concussion after a night of drinking in college. She is pursuing a Ph.[D.], which speaks volumes as to her intelligence and cognitive abilities.

This appeal followed.

II.

The scope of our review of trials in the Family Part is particularly limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12. "Because a trial court hears the case, sees and observes the witnesses, [and] hears them testify, it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Id. at 412 (alteration in original) (citations and internal quotation marks omitted). We accord particular deference to the judge's factfinding because of "the family courts' special jurisdiction and expertise in family matters." Id. at 413.

However, when "the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom, the traditional scope of review is expanded." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citations and internal quotation marks omitted). "Still, even in those circumstances we will accord deference unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'" Ibid. (citations omitted).

A.

A-3324-16T2

We first consider plaintiff's contention that the court erred in denying her application for an adjournment to seek new counsel on the day of trial. Requests for adjournments likewise are addressed to the sound discretion of the trial judge. Kosmowski v. Atlantic City Med. Ctr., 175 N.J. 568, 575 (2003). Such discretionary decisions will not be set aside unless the judge pursued a "manifestly unjust course." Dolan v. Sea Transfer Corp., 398 N.J. Super. 313, 330 (App. Div. 2008); Union Cty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007).

Here, plaintiff retained four attorneys, and contemplated hiring a fifth lawyer within one month of trial. Plaintiff withdrew that application, then caused her fourth attorney to withdraw from the case on the day of trial. Citing the protracted history of the case and plaintiff's withdrawal of her application to substitute a fifth attorney in this matter, the trial judge implicitly considered the "manifest rights of [both] parties" in denying plaintiff's request. In re Koretzky, 8 N.J. 506, 535 (1951). We, therefore, discern no abuse of discretion here.

B.

We turn to plaintiff's overlapping contentions that the judge erred in imputing income to defendant, and denying her request to call Koenig and Gaskin as witnesses regarding defendant's earnings. Plaintiff also asserts that

11

she did not stipulate to Koenig's valuation of defendant's business. Curiously, plaintiff does not challenge the judge's determination that she stipulated to Koenig's valuation of her business, nor the judge's imputation of income to her.

"A Family Part judge has broad discretion in setting an alimony award and in allocating assets subject to equitable distribution." Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012). "Of course, [as to alimony] the exercise of this discretion is not limitless[,]" and is "frame[d]" by the statutory factors set forth in N.J.S.A. 2A:34-23(b). Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004), aff'd as modified, 183 N.J. 290 (2005). Regarding equitable distribution, the statutory factors enumerated in N.J.S.A. 2A:34-23.1, "used in concert with the facts of each case," inform the otherwise "broad discretion" accorded to the trial judge. Id. at 434-35.

"Where the issue on appeal concerns which assets are available for distribution or the valuation of those assets, . . . the standard of review is whether the trial judge's findings are supported by adequate credible evidence in the record. Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978). "[W]here the issue of appeal concerns the manner in which allocation . . . is made," the appellate court reviews for abuse of discretion. Id. at 444.

Equitable distribution is a three-step proceeding, in which a trial judge must: "decide what specific property of each spouse is eligible for distribution[;] . . . determine its value for purposes of such distribution[;] . . . [and] decide how such allocation can most equitably be made." Rothman v. Rothman, 65 N.J. 219, 232 (1974). Pursuant to N.J.S.A. 2A:34-23.1, the trial court must consider factors including the duration of the marriage, the income or property the parties brought to the marriage, and their economic circumstances at the time of division.

Where, as here, a trial judge has determined that a party is voluntarily underemployed, the judge has the discretion to impute income. Caplan v. Caplan, 182 N.J. 250, 268 (2005) (The judge should consider "whether the [spouse] has just cause" for voluntarily remaining unemployed or underemployed.); Golian v. Golian, 344 N.J. Super. 337, 341 (App. Div. 2001) ("Income may be imputed to a party who is voluntarily unemployed or underemployed.").

"Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). An alimony award should "take into consideration the

real facts and circumstances of each party's financial situation including actual income, expenses, support from other sources and potential earning capacity." Connor v. Connor, 254 N.J. Super. 591, 604 (App. Div. 1992). On appeal, a trial judge's imputation of a specific amount of income "will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence." Storey, 373 N.J. Super. at 474-75. There are no bright-line rules that govern the imputation of income. Id. at 474; see also Caplan, 182 N.J. at 270. Against these standards, we find no reasons to disturb the well-reasoned exercise of discretion in this regard.

C.

We also find no merit to plaintiff's claim that the court should have permitted her to call Koenig where, as here, the court admitted his reports in evidence. As defendant argued in his merits brief, plaintiff's contention was taken out of context. Specifically, the judge indicated before testimony commenced that either party could subpoena Koenig, but that admission of the reports would save both parties "time and money." Equally unavailing is plaintiff's argument that she should have been permitted to call Gaskin, who was not named in discovery and had not prepared an expert report. The judge did not abuse her discretion in declining to allow her testimony. Compare R. 5:3-

14

3(h) (permitting parties in family actions to retain their own experts) with R. 5:5-1(e) (mandating completion dates for discovery).

We conclude that plaintiff's claims of error regarding the equitable distribution award and the amount of alimony, in light of the record, reveal nothing "so wide of the mark" that a clear mistake was made that warrants our intervention. We affirm substantially for the reasons expressed in Judge Firko's thoughtful written opinion.

Finally, plaintiff argues the court improperly denied her application for counsel fees. "An award of counsel fees in a matrimonial action is discretionary." Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010), aff'd o.b., 208 N.J. 409 (2011). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion[,]" Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), or a clear error in judgment. Tannen, 416 N.J. Super. at 285.

Here, the trial judge conducted an extensive evaluation of the applicable factors set forth in Rule 5:3-5(c), Rule 4:42-9(a), and RPC 1.5(a). Because she found, pursuant to Rule 5:3-5(c)(3), the positions advanced by the parties lacked both reasonableness and good faith, the judge determined neither party was

entitled to fees or costs. Moreover, in evaluating the reasonableness of the fee charged by counsel pursuant to RPC 1.5(a), the judge aptly noted neither party presented the requisite affidavits of counsel "since both parties were self-represented." We discern no abuse in her determination.

Finally, plaintiff's argument that the court erred in failing to compel defendant to pay their adult children's expenses, to the extent not previously addressed, lacks sufficient merit to warrant further discussion in our opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3324-16T2