**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2061-21

MARSHALL WILLIAMS,

    Plaintiff-Appellant,

v.

ESTATE OF EVELYN
L. WILLIAMS,[1]

    Defendant-Respondent.

_____

        Submitted June 4, 2024 – Decided July 31, 2024

        Before Judges Natali and Puglisi.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FM-04-0886-20.

        Frank H. Rose, attorney for appellant.

        Stephen W. Guice, attorney for respondent.

---

[1] On our order for temporary remand, defendant Estate of Evelyn L. Williams was substituted for defendant Evelyn L. Williams by post-judgment order dated September 9, 2022.

PER CURIAM

Plaintiff Marshall Williams appeals from the Family Part's December 10, 2021 Final Judgment of Divorce (FJOD) and the February 4, 2022 order denying his application for an order to show cause seeking to rescind the FJOD. We affirm both orders.

The parties were married in 1985. Plaintiff filed a complaint for divorce from defendant on February 11, 2020. After default was entered and vacated, defendant filed an answer and counterclaim for divorce on or about October 12, 2020. Both parties were represented by counsel throughout the proceedings.

Although the parties participated in a matrimonial early settlement panel and several settlement conferences, they were unable to reach an agreement that resolved all their issues. An initial trial date of July 14, 2021 was adjourned at defendant's request because she was undergoing brain surgery that day, having been diagnosed with cancer in 2018. Another settlement conference was held by Judge Sherri Schweitzer on September 15, 2021, after which the parties, through counsel, continued their attempts to resolve the matter. According to defendant's attorney, throughout the conferences and discussions, plaintiff was intractable in his settlement position.

A-2061-21

In the morning of December 10, 2021, defendant's attorney contacted plaintiff's attorney and advised him defendant was on hospice and wanted to move forward with the divorce before she died. He then contacted Judge Schweitzer's chambers to request an expedited conference, given the urgency of the situation. The judge's chambers advised counsel to appear for a virtual conference at 4:00 p.m. that day.

According to plaintiff's attorney, the judge conducted an initial conference with counsel off the record, at which time she advised him defendant's health was failing, defendant had accepted plaintiff's settlement offer, and counsel had fifteen minutes to join plaintiff on the virtual conference to put through the divorce. The judge also informed counsel that defendant's sister, Anita Spady, who had power-of-attorney for defendant, would appear virtually as well. Plaintiff's counsel advised the judge that the previous day, plaintiff told him defendant had revoked Spady's power-of-attorney because Spady had stolen from her, and defendant had granted power-of-attorney to the parties' son. The judge said she would address the issue during the hearing.

Once on the record, plaintiff said he was "a little confused about . . . whether the person that's speaking on behalf of [defendant] qualifies to speak." Judge Schweitzer questioned defendant's counsel:

A-2061-21

THE COURT:       So [plaintiff] posed the question that I want to make sure we address clearly for the record.

I received a phone call to schedule a conference. I understand, [defendant's counsel], that your client's health is failing, is failing rapidly. Is that correct?

[D COUNSEL]:     That's correct, [Y]our Honor. My client is on hospice at home. She is conscious, but she's heavily medicated with pain medication.

THE COURT:       Okay. And my understanding is that when she took a turn for the worse, the parties engaged in—were engaged in settlement communications and discussions; is that correct?

[D COUNSEL]:     Yes, [Y]our Honor. We've been engaged in settlement discussions for almost a year now.

THE COURT:       Okay. And as—before your client became, let's just—I would say unable to make decisions for herself, you had been in communications with her?

[D COUNSEL]:     Yes, [Y]our Honor. I had spoken to her extensively about [plaintiff's counsel]'s November 29[], 2021 correspondence and proposal that he has set forth on behalf of his client contained in that five-page letter, and I did speak to my client at length about that.

4

THE COURT:  Okay.  And do you have—at that point, were you authorized to accept the settlement?  Is that what—

[D COUNSEL]:  I was—I was authorized, yes.  And I—she told me to (indiscernible) the response on her behalf to that, but subsequently about—I . . . wrote a response on December 3[], and I did have discussions with my client that if we could not get a more fair proposal, to accept the proposal that [plaintiff's counsel] had proposed in his November 29[], 2021 letter he wrote to me and move (indiscernible).

Defendant's counsel further advised the judge he did not know who had power-of-attorney for her because he did not have a copy of the document. Plaintiff's counsel reiterated plaintiff told him he had been advised by his son that defendant signed a new power-of-attorney appointing the son in place of Spady, but acknowledged he did not have any documentation of the alleged change.  Spady testified under oath she had written power-of-attorney signed by defendant on October 15, 2021, prior to defendant's brain surgery, and she brought defendant home after surgery and "settled with hospice and everyone on her behalf."

The judge found defense counsel's representations and Spady's sworn testimony sufficient to proceed with the uncontested divorce:

5

All right. So as long as you have a written power-of-attorney that has not been revoked, then I am—I am also comfortable proceeding on the fact that [defendant's counsel] had settlement authority, and . . . I'm just going to need testimony from [plaintiff] regarding the cause of action, and we can place the terms of the settlement on the record.

Plaintiff's counsel set forth the terms of the parties' settlement agreement, which included sale of the marital home and distribution of the proceeds that would buy out plaintiff's alimony obligation to defendant, equalization of the parties' retirement accounts, distribution of personalty, and attorneys' fees.

Plaintiff's counsel then questioned plaintiff about the settlement. Although plaintiff commented "[e]verything's happened so quickly" and the proceeding was "moving real fast," he acknowledged that he understood the terms of the agreement, he was not forced or coerced into entering into the agreement, and he did not have any "side deals." He also understood his right to trial of the matter and asked the court to waive that right and accept the settlement agreement. Plaintiff confirmed he was not under the influence of any alcohol, narcotics or other substances that would affect his ability to think clearly, and again reiterated he was proceeding "freely and voluntarily." He further stated his counsel had answered all his questions and he was satisfied with counsel's services.

6

In response to plaintiff's comments about the pace of the proceedings, the judge questioned him directly:

THE COURT: All right.

Now, sir, you—sir, you understand that this is it. This is the hearing. I know that you keep saying it's going to be happening fast, and I understand that this is an unfortunate situation.

. . . .

So you keep saying that this is going fast. This is actually—this is one of the oldest cases in the courthouse. Okay? So this has been going on for years. Over the course of the past years, you've had opportunity to speak with [counsel]; is that correct?

[PLAINTIFF]: Pardon me?

THE COURT: You've had an opportunity to speak to your attorney?

[PLAINTIFF]: Yes, we've spoken multiple times, yes.

THE COURT: Great, and he's answered any and all questions that you have regarding the terms of this settlement agreement?

[PLAINTIFF]: Yes, I believe that. I wanted—

THE COURT: So if you have a question you want to ask him, I will pause, and you can—do you need to speak with your attorney?

7

[PLAINTIFF]:    I'd like to find out when—

THE COURT:    Or you could just ask him.

[PLAINTIFF]:    I would like to find out when I would get a copy of the agreement.

The judge advised plaintiff she would enter the FJOD that day and give counsel ten days to submit an amended FJOD incorporating the terms of the parties' agreement. Plaintiff's only questions concerned the status of the restraining order defendant had obtained against him and how he would retrieve his property from the marital home, which counsel addressed. The judge then continued her colloquy:

THE COURT:    All right.

And, [plaintiff], do you believe that you have sufficient information regarding all of the assets, the debts and the liabilities to enter into this agreement?

[PLAINTIFF]:    I have faith in my attorney. Like I said, and I'll say it again, is everything happened so quickly, I wasn't expecting a call today.

THE COURT:    Well, I know that.

[PLAINTIFF]:    (Indiscernible)

THE COURT:    But this is not a new subject. You knew this was coming.

A-2061-21

[PLAINTIFF]:      Right, but I thought it was coming in a few months. I didn't think I'd get a call today to discuss settlement. But, you know, I believe my attorney and all. It's just that, like I said, everything happened so quickly. I wasn't expecting a call today.

And the other thing is my sister-in-law having power-of-attorney, a police officer came over the house today and showed the document that she's no longer power-of-attorney.

So I'm just wondering whether this is, you know—

[P COUNSEL]:     Well, . . . , that's what you were told. You weren't there; correct?

[PLAINTIFF]:      No. He said that the police officer came over the house—

[P COUNSEL]:     Again, you can't—you can't just repeat what other people told you.

[PLAINTIFF]:      Okay. Okay. All right. Fair enough. All right.

THE COURT:       And here's the other thing, [defendant's counsel], we're going to go on the record— you've already placed on the record that you were authorized by your client, and when you spoke with her, she was clear and concise with you; correct?

[D COUNSEL]:     Yes, [Y]our Honor. And she was not under heavy medication at that time.

9

Defendant's counsel then questioned Spady, who stated she had durable power-of-attorney and had spoken to defendant about the divorce "many times." She confirmed she had discussed the settlement agreement with defendant's counsel, and she believed the agreement was as fair as it could be under the circumstances because defendant "want[ed] this over." Spady had no doubt defendant wanted to accept the agreement and be divorced and, after further explanation, confirmed defendant wanted to withdraw her counterclaim for divorce in order to accomplish that.

Plaintiff's counsel, through colloquy with plaintiff, established jurisdiction of the court, proper venue and the cause of action for divorce based on irreconcilable differences. The judge then found:

> All right. The [c]ourt has had opportunity to conference this case for many months now, and today was the—we scheduled this very conference because the matter needed to resolve today due to the health issues of [defendant].
>
> I've taken the testimony of [plaintiff]. It's clear to me he understands what's going on here. He keeps saying to me that this is happening so fast, and I believe that it happened faster than you thought it would. However, the parties everybody engaged in negotiations for many months.
>
> You've answered all of the questions of the settlement agreement, sir, consistently. You understood what was being agreed to. The parties

10

negotiated arduously for a long period of time, and the terms that you've proposed have been accepted. You've told me that.

You understand what's happening here. You've been listening to the questions, and I know that, because you've answered—asked questions. It tells me you're paying attention, you're listening, you're being truthful.

Ms. Spady, I am so sorry for your loss—that your sister is so gravely ill, but you have been a composed person, direct. You answered every question directed immediately. You know exactly what's been going on here.

You have provided the information that this has been a constant conversation. You're aware that your sister authorized [counsel] to settle this matter, and you have the durable power-of-attorney which authorizes you to act on her behalf. But be that as it may, [counsel] likewise [wa]s authorized to accept the settlement before she got sicker.

After making findings of jurisdiction and venue, the judge granted plaintiff the divorce and incorporated the settlement agreement into the FJOD. Defendant died on December 22, 2021.

On January 4, 2022, plaintiff filed an emergent application for an order to show cause alleging Spady was not authorized to act on defendant's behalf and seeking to rescind the FJOD. On that date, the judge entered a temporary order to show cause restraining dissipation or encumbrance of marital assets and setting a return date for the application.

11

On February 4, 2022, counsel for both parties appeared along with plaintiff. Plaintiff's counsel again alleged that at the time of the divorce, Spady knew she did not have power-of-attorney because she had been served that morning with the superseding power-of-attorney naming the parties' son in her stead. Counsel subpoenaed a police officer who appeared for the hearing purportedly to testify about a complaint defendant made against Spady for theft. Neither the parties' son nor Spady appeared.

The judge asked counsel what defendant's loss was, since he obtained the divorce he sought, and how defendant had standing to raise these issues. Counsel did not provide any substantive response to these inquiries and instead repeatedly reiterated Spady did not have the authority to act on defendant's behalf and they "d[id] not know [defendant]'s true intentions."

The judge noted plaintiff knowingly and voluntarily wanted to proceed with the settlement and divorce and, Spady's testimony aside, defendant's counsel represented to the court defendant accepted the agreement and wanted to withdraw her counterclaim and proceed with the divorce. Accordingly, the judge entered an order denying the application. This appeal follows.[2]

---

[2] During the pendency of this appeal, plaintiff filed a motion to supplement the record with two certifications, one from another sister of defendant and one from

Plaintiff first argues the trial judge erred by failing to provide plaintiff and counsel timely notice of the divorce proceeding, in violation of his due process rights. Plaintiff did not raise this issue before the trial court and we ordinarily do not consider an argument raised in the first instance unless the issue goes to the jurisdiction of the trial court or concerns matters of substantial public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Even if we consider this substantive claim, we defer to the trial court in matters concerning adjournment requests and scheduling, State ex rel. Comm'r of Transp., 432 N.J. Super. 1, 7 (App. Div. 2013), and will not intervene absent an abuse of discretion.

An abuse of discretion occurs when a trial court makes "findings inconsistent with or unsupported by competent evidence," utilizes "irrelevant or inappropriate factors," or "fail[s] to consider controlling legal principles." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (first quoting Storey

defendant's caretaker. We ordered a limited remand for the trial judge to consider the statements and determine whether the record should be supplemented with them. On August 28, 2023, the judge submitted a letter to us reflecting her opinion the certifications were largely based on hearsay and were therefore not competent evidence. In addition, based on her review of the record, the certifications were not relevant because defendant's counsel withdrew the counterclaim on the record and the matter proceeded as an uncontested divorce based on plaintiff's testimony. After considering the judge's assessment, we denied the motion as moot.

v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004); then quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571, (2002); then quoting Storey, 464 N.J. Super. at 479)). An abuse of discretion can also be found if the court "fails to take into consideration all relevant factors[,] and when its decision reflects a clear error in judgment." State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017).

After reviewing the record, we discern no abuse of discretion in the judge's scheduling a same-day hearing. Defendant's health was in decline, the parties had reached an agreement, and the matter had been pending for over a year. Despite plaintiff's commentary about the suddenness of the hearing, he did not request an adjournment nor did he accept the judge's offer for additional time to speak with his attorney. Both his own counsel and the court painstakingly questioned him to ensure he understood his rights and waived them voluntarily, and the matter proceeded as an uncontested divorce at his request. While we recognize the hearing was not noticed or conducted in the way a divorce typically proceeds, the scheduling of it was within the judge's discretion given the attendant circumstances.

As to plaintiff's appeal of the order to show cause, a Family Part judge's decision not to conduct a plenary hearing is also reviewed on an abuse of

discretion standard.  Hand v. Hand, 391 N.J. Super. 102, 111-12 (App. Div. 2007).  Having reviewed the record in light of this deferential standard of review, we are unpersuaded by plaintiff's arguments.  We agree with the trial judge's assessment that a hearing was unnecessary because, even if Spady did not have power-of-attorney and knowingly misrepresented that fact, defendant's counsel represented to the court that defendant agreed to the settlement, withdrew her counterclaim and consented to proceeding with the uncontested divorce hearing.[3]  Nothing in the certifications annexed to the application created any issue of material fact that would have warranted a hearing.

To the extent we have not expressly addressed any issues raised by plaintiff, it is because they lack sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3]  We further note plaintiff's application for an order to show cause failed to address any of the factors necessary to establish entitlement to injunctive relief. See Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013) (reiterating the four factors outlined in Crowe v. DeGoia, 90 N.J. 126, 132-34 (1982)).

A-2061-21