**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2884-19

K.W.,[1]

     Plaintiff-Appellant,

v.

S.W.,

     Defendant-Respondent.

_____

Argued July 27, 2021 – Decided August 17, 2021

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-0437-11.

Drew A. Burach argued the cause for appellant (Archer & Greiner, PC, attorneys; Jennie Anne Owens, on the briefs).

---

[1] Because we quote and discuss income and expense information from the parties' divorce agreement and case information statements, we use initials to maintain confidentiality. See R. 1:38-3(d)(1).

Amy C. Goldstein argued the cause for respondent (Goldstein & Mignogna, PA, attorneys; Amy C. Goldstein and Melissa L. Mignogna, on the brief).

PER CURIAM

In this post-judgment matrimonial action, plaintiff K.W., the ex-husband, appeals the Family Part's order of February 7, 2020, recalculating child support for the parties' two children at $251 weekly and awarding $102,911.28 in counsel fees to defendant S.W., his ex-wife. For the reasons that follow, we affirm the order substantially for the reasons set forth by Judge James J. Ferrelli in his comprehensive sixty-three-page decision.

I.

The following pertinent facts are derived from the record. The parties divorced in 2013 after nine years of marriage. They have two children, M.W., born in March 2002, and C.W., born in May 2004. A marital settlement agreement (MSA) was incorporated into the final judgment of divorce (FJOD) entered on March 19, 2013. In accordance with the relevant provisions of the MSA, the parties agreed to share legal and physical custody of the children and reserved on the final determination of residential custody, although the MSA named defendant as the parent of primary residence (PPR) and plaintiff as the parent of alternate residence. Plaintiff agreed to pay defendant limited duration

alimony of $33,600 annually for three-and-one-half years and child support of $73 per week. The MSA provided that plaintiff's gross annual income from salary and investments is $185,000, and defendant's imputed gross annual salary as a pharmacist is $125,000. After plaintiff's alimony obligation terminated on September 18, 2016, the parties agreed in their MSA to recalculate child support and related expenses for the children.

On January 16, 2013, before the entry of the FJOD, a prior judge appointed Dr. Janet Berson to conduct a custody and parenting time evaluation. In her first assessment issued on July 16, 2013, Dr. Berson concluded that the "current schedule of dividing time basically equally seems to be going very well." The same conclusion was reached in Dr. Berson's November 15, 2013 report, ultimately leading the prior judge to reduce Dr. Berson's role to a monitor instead of an evaluator. The record reflects that plaintiff did not object to Dr. Berson's changed role, and he withdrew his request for equal parenting time and the PPR designation, an issue left open in the MSA. The parties' attempt at mediation between April and October 2014 was unsuccessful.

Thereafter, plaintiff changed his position again and pursued fifty-fifty parenting time and the PPR designation. The MSA provided for equal parenting time during the summer months, and defendant had one extra overnight each

 A-2884-19

month during the school year. After plaintiff filed a motion on these issues and financial issues on October 16, 2014, a prior judge entered an order on January 16, 2015, providing for a period of discovery on custody and parenting time issues and ordered the parties to return to Dr. Berson for an updated evaluation. Dr. Berson met with the parties, the children, and plaintiff's then girlfriend and now fiancée, K.N., multiple times. Dr. Berson confirmed the children were upset after K.N. moved into plaintiff's home, and they were not told about it. Ultimately, a fifth assessment was issued by Dr. Berson on November 18, 2015, in which she opined: "I think there is no reason for mother not to be PPR and that the children need to continue with the present schedule." A plenary hearing was scheduled because the custody and parenting time issues were unresolved.

During the ongoing custody and parenting time discord, the issue under review—termination of defendant's alimony on September 16, 2016, and recalculation of child support—eventually became the focus of the plenary hearing. Each party also requested counsel fees.

In January 2017, the parties entered into a consent order appointing Dr. Gregory Joseph to perform a custody evaluation. In his December 27, 2017 report, Dr. Joseph opined that defendant should remain the children's PPR, and there was no reason to change the parenting time schedule in order to give

A-2884-19

plaintiff "173.5 days per year." Judge Ferrelli asked counsel to brief the issues of whether the custody reports authored by Dr. Berson and Dr. Joseph could be reviewed by the court in advance of the plenary hearing and whether the reports could be admitted into evidence in lieu of live testimony under Kinsella v. Kinsella, 150 N.J. 276, 319-320 (1997) and Rule 5:3-3(f). The judge also requested briefing on whether the children, then almost seventeen and fourteen years of age, should be interviewed by the court.

Plaintiff objected to the judge reading the custody reports in advance of the hearing and conducting interviews of the children. On April 4, 2019, the judge entered an order scheduling interviews of the children and ordered plaintiff to pay for Dr. Berson's and Dr. Joseph's appearances at the hearing. The judge decided to read the custody reports before the hearing and rejected plaintiff's position on this issue. Several days later, on April 9, 2019, after five years of litigation, plaintiff's counsel sent a letter to the judge advising plaintiff was withdrawing his request for equal parenting time and the PPR designation.

The plenary hearing was conducted on May 13, 21, 23, and June 17, 2019. Documents introduced into evidence showed plaintiff's 2018 income was $176,367, comprised of his earned income from his father's construction

business, W.[2] & Associates, of $163,693, and unearned income of $12,694. Plaintiff's father was president of W. & Associates until 2014 when plaintiff became president because his father's health issues led to his retirement in 2016. In 2019, plaintiff's salary remained at $150,000, which was the same annual amount for approximately ten years prior, with an anticipated bonus of $13,000. Prior to his retirement, plaintiff's father had the "final say" as to salary, bonus, and perquisites until plaintiff assumed control of the company.

On cross-examination, plaintiff testified that his bonuses fluctuated during the marriage, and one year he received $50,000. The evidence presented revealed plaintiff's bonus in 2009 was $39,000; and in 2011, he only received an $800 bonus. Three years prior to the plenary hearing, plaintiff paid himself a bonus of $13,000 per year. In addition, plaintiff testified that he receives perquisites from the business, including a cell phone, a computer, a car, and tennis lessons. The judge noted that "the parties did not introduce evidence to establish the value of these in-kind benefits, and therefore the [c]ourt has no basis upon which to include these in-kind benefits as income for purposes of calculating child support."

---

[2] "W." is the abbreviation of the parties' surname.

A-2884-19

During the plenary hearing, plaintiff testified about his current family circumstances and expenses residing with K.N. and their child. K.N. has been employed at W. & Associates for over a decade. Plaintiff testified that he "probably" made K.N.'s salary recommendations and was uncertain about the amount of her bonuses. K.N.'s salary of $60,000 per year increased to $86,000 per year by 2019, plus bonuses. As of 2016, plaintiff had the sole decision-making authority for K.N.'s compensation, as well as his own.

Defendant testified she has a bachelor's degree in pharmacology and that she sought additional credentials to enhance her employment prospects. During the marriage, defendant worked part-time as a pharmacist, and she applied for full-time positions dating back to 2014. At the hearing, defendant presented an employment search chart illustrating sixty-five job search entries in pharmaceutical and related industries. No employment offers were extended to her. Defendant testified that the parties agreed she would work part-time in order to care for the children, and she earned between $30,000 and $40,000 annually during the marriage. Lacking a doctorate in pharmacy degree has thwarted defendant's success in obtaining employment in this field, according to her testimony.

A-2884-19

Defendant testified that she earns $68.10 per hour, and her current employer is hiring younger individuals with a doctorate in pharmacy degree at a rate of $54 per hour. In 2017, defendant's W-2 form revealed she earned $92,026.49 in gross income; in 2018, her W-2 form indicated she earned $85,579 in gross income. Defendant testified she anticipated her income would decrease in the future because a central scheduling system was implemented that she has to now bid for, and she no longer can cover for a pharmacy manager or open shifts. The judge averaged defendant's income for 2017, 2018, and 2019, and utilized $71,123 as her gross income for child support calculation purposes.

In February 2019, plaintiff purchased a 2012 Prius for $10,000 from his fiancée for M.W. Title of the vehicle remained in plaintiff's name, and he pays the insurance premium of $1,290.37 to allow M.W. to drive the vehicle. Defendant objected to the purchase of the Prius for M.W. Since the parties' divorce, each parent has paid for the children's expenses. In particular, plaintiff has paid for the children's summer camps and programs, piano lessons, and M.W.'s pre-college admission tests.

The judge found plaintiff's testimony "to be lacking in credibility, disingenuous, and intentionally misleading" especially regarding his compensation and bonuses. In his decision, the judge highlighted that plaintiff

8

"has not increased his salary since the divorce litigation was commenced on August 8, 2010," even though other employees "have been given raises." As to plaintiff's bonus, the judge described plaintiff's testimony as "particularly egregious," which led the court to conclude plaintiff "intentionally" gave himself an "artificially low bonus" and "virtually no increase in his salary" in order to obtain an advantage over defendant. In a similar vein, the judge found plaintiff's testimony regarding annual gifts from his parents was "calculated, hesitant, guarded, and imprecise."

Based upon the evidence, the judge ordered plaintiff to pay the top-of-the-guidelines amount of child support of $251 per week for both children plus an enhancement: plaintiff to be 100% responsible for the past and future summer programs for the children, camps, the purchase price of the Prius, M.W.'s automobile insurance, and routine maintenance on the vehicle. Counsel fees of $102,911.98 were awarded to defendant. This appeal ensued.

## II.

On appeal, plaintiff raises several contentions for our consideration:

> (1) the judge misapplied the law and abused his discretion when calculating child support by including hypothetical gifts and bonuses to artificially increase plaintiff's earned income;

A-2884-19

(2) the judge erred by failing to impute income to defendant;

(3) the judge failed to provide plaintiff with the appropriate other dependent deduction (ODD) contrary to the child support guidelines;

(4) the judge erred by awarding supplemental child support to be paid by plaintiff;

(5) the allocation of income between the parties to pay the children's unreimbursed healthcare expenses was improvidently calculated; and

(6) the judge did not comply with Rule 1:7-4 by not providing factual findings to justify the counsel fee awarded to defendant.

Our review of a Family Part judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Because of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding." Id. at 413. Thus, we will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)), and will "not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence

as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). With regard to questions of law, a trial judge's findings "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." Z.P.R., 351 N.J. Super. at 434 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Consequently, when [we] conclude[] there is satisfactory evidentiary support for the trial court's findings, '[our] task is complete and [we] should not disturb the result . . . .'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (third alteration in original) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)). "[L]egal conclusions are always reviewed de novo." Id. at 433-34 (citing Manalapan, 140 N.J. at 378).

Gifts and Bonuses Imputed to Plaintiff

We first address plaintiff's contention that the judge made various errors in calculating the new child support award by including alleged hypothetical gifts and bonuses to determine his earned income. The instructions for defining

11

gross income for purposes of the guidelines (App. IX-B) refer to monies available to pay the expenses of the children. They indicate:

> Income and expenses from self-employment or the operation of a business should be carefully reviewed to determine gross income that is available to the parent to pay a child support obligation. In most cases, this amount will differ from the determination of business income for tax purposes.
>
> [Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-B to R. 5:6A, at 2, www.gannlaw.com (2021). (Instructions for Lines 1 through 5 of the sole-parenting worksheet, determining income from self-employment or operation of a business ¶ b).]

Subparagraph c of the same section also lists a series of expenses the Internal Revenue Service allows for tax purposes, but which the guidelines do not permit the joint owner of a closely held corporation, such as plaintiff, to exclude from the business's income as ordinary and necessary expenses. These include certain types of depreciation, home offices, entertainment, excessive voluntary contributions to pension plans, and, of significance here, "any other business expenses that the court finds to be inappropriate for determining gross income for child support purposes." Id. at ¶ c (11).

To the extent plaintiff's argument can be understood for the proposition that it was rational for his salary to remain the same and his bonuses decreased

after he became president, we disagree. Rather, the appropriate analysis was made by Judge Ferrelli:

> Indeed, [p]laintiff's testimony regarding his salary and bonuses was so incredible that it leads the [c]ourt to the conclusion that [p]laintiff has intentionally given himself [an] artificially low bonus and virtually no increase in his salary for purposes of obtaining an advantage over [d]efendant in this litigation. See e.g., Elrom . . ., 439 N.J. Super. [at] 435-36 . . . ("Imputation may also be justified when examining income reported by self-employed obligors, who control the means and the method of their earnings."); Donnelly v. Donnelly, 405 N.J. Super. 117, 128-129 (App. Div. 2009) (a self-employed obligor is "in a better position to present an unrealistic picture of his or her actual income than a W-2 earner").

In the matter under review, the judge scrupulously examined plaintiff's testimony and documentary evidence, including plaintiff's individual and business tax returns, his case information statements, and certifications. The judge concluded "[p]laintiff's inability to offer credible, truthful testimony" was not only related to the child support recalculation issue but "[h]is testimony regarding his compensation and bonuses was likewise not credible." Based upon plaintiff's role in determining compensation and bonuses for his company, the judge emphasized the bonus issue was "undermined," noting plaintiff "is responsible for setting salaries and bonuses for all employees," including himself. We are unable to discern any abuse of discretion.

A-2884-19

Imputation of Income

Plaintiff also urges error in the judge's imputation of income to him and disavows defendant's purported underemployment and her representation in the MSA that she was capable of earning $125,000 annually as a licensed pharmacist.

A trial judge has the discretion to impute income, but only after first finding that a party is voluntarily unemployed or underemployed. Caplan v. Caplan, 182 N.J. 250, 268 (2005); Golian v. Golian, 344 N.J. Super. 337, 341 (App. Div. 2001); Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (App. Div. 1998). In fact, "[s]uch a finding is requisite, before considering imputation of income." Dorfman, 315 N.J. Super. at 516. Here, the judge determined plaintiff was not necessarily underemployed but underpaid, and that defendant was involuntarily underemployed.

"Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). On appeal, a trial judge's imputation of a specific amount of income "will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence." Id. at 475. There are no bright-

line rules that govern the imputation of income.  Id. at 474; see also Caplan, 182 N.J. at 270.  Against these standards, we see no abuse of discretion.

Here, the judge rejected plaintiff's claim that defendant was voluntarily underemployed in light of the evidence provided evincing her active and continuous search efforts from 2014 to 2019.  Defendant's imputed income of $125,000 in the MSA was premised upon what she projected in 2013, the time when the MSA was executed, she could earn as a full-time pharmacist.  In his decision, the judge found defendant was "involuntarily underemployed" and was "unable to secure full[-]time employment as a pharmacist despite her best efforts to do so."  Therefore, the judge concluded defendant's full-time income set forth in the MSA should not be imputed to her in recalculating child support.  The judge's decision was based upon substantial credible evidence in the record.  We therefore reject defendant's contention that the judge failed to impute income to defendant.

The ODD Deduction

Plaintiff next challenges the judge's decision not to compute the ODD for his third child, which plaintiff sought for the first time in his post-trial brief. From the onset, we underscore that procedurally, plaintiff did not seek an ODD

calculation in his moving papers, in violation of Rule 1:6-2(a), which provides in pertinent part:

> . . . An application to the court for an order shall be by motion, or in special cases, by order to show cause. A motion, other than one made during a trial or hearing, shall be by notice of motion in writing unless the court permits it to be made orally. Every motion shall state the time and place when it is to be presented to the court, the grounds upon which it is made and the nature of the relief sought . . . .

Moreover, no oral argument was requested by plaintiff in respect of the ODD issue, in violation of Rule 1:6-2(d). Therefore, the judge was correct in declining to address the ODD calculation.

Supplemental Child Support

Plaintiff also asserts the judge erred by awarding supplemental child support to be paid by plaintiff. Child support is necessary to ensure parents provide for the "basic needs" of their children. Pascale v. Pascale, 140 N.J. 583, 590 (1995). "The purpose of child support is to benefit children, not to protect or support either parent." J.S. v. L.S., 389 N.J. Super. 200, 205 (App. Div. 2006).

Although trial judges are given "substantial discretion in making a child support award . . . most child support awards are computed pursuant to the [g]uidelines." Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012); see

16

R. 5:6A (stating generally the guidelines "shall be applied when an application to establish or modify child support is concerned by the court").  The Court developed the guidelines, and Rule 5:6A incorporates by reference interpretive "Considerations in Use of the Child Support Guidelines" (Appendix IX-A).

The explanatory Appendix IX-A is designed "to provide the court with economic information," detailing the when, why and how the guidelines are applied to establish or modify child support, which assists in rendering "fair and adequate child support awards."  Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 1, www.gannlaw.com (2021).  "The guidelines assume that the parents are sharing in the child-rearing expenses in proportion to their relative incomes and that those percentages are based on the combined net income of the parents."  Caplan, 182 N.J. at 264.

"In accordance with Rule 5:6A, these guidelines must be used as a rebuttable presumption to establish . . . all child support orders.  The guidelines must be applied in all actions . . . ."  Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 2.  "A rebuttable presumption means that an award based on the guidelines is assumed to be the correct amount of child support unless a party proves to the court that circumstances exist that make a guidelines-based award inappropriate in a specific case."  Ibid.

Underpinning a guidelines-based support award are assumptions regarding "relative spending on children in the three broad consumption categories" as follows: "38% fixed expenses, 37% variable expenses, and 25% controlled expenses . . . ." Id. ¶ 14(g)(1).

> Fixed costs are those incurred even when the child is not residing with the parent. Housing-related expenses (e.g., dwelling, utilities, household furnishings and household care items) are considered fixed costs.
>
> Variable costs are incurred only when the child is with the parent (i.e., they follow the child). This category includes transportation and food.
>
> Controlled costs over which the PPR, as the primary caretaker of the child, has direct control. This category includes clothing, personal care, entertainment, and miscellaneous expenses.
>
> [Id. ¶ 14(f).]

A supplemental award may be issued when the combined net annual parental income exceeds $187,200. Id. ¶ 20. The amount of additional support is based on the review of the factors delineated in N.J.S.A. 2A:34-23.[3] See also

---

[3] N.J.S.A. 2A:34-23(a) requires review of these factors when determining a discretionary child support award:

(1) Needs of the child;

Caplan v. Caplan, 364 N.J. Super. 68, 86-90 (App. Div. 2003) (articulating a procedure for determining the discretionary amount of child support applicable when parental net income exceeds the guidelines' limitations), aff'd 182 N.J. at 250.

---

(2) Standard of living and economic circumstances of each parent;

(3) All sources of income and assets of each parent;

(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing childcare and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

Our Court has also directed that while the parties' respective income percentages are to be considered for calculating child support under the guidelines, those percentages cannot be used to determine the supplemental child support component. The Court elaborated:

> [B]ecause the income and assets of each party are only two of the many statutory factors the trial court must consider in determining a fair and just child support award, the allocation equation utilized under the guidelines-based award has little or no application to the amount of additional support determined through analyzing the N.J.S.A. 2A:34-23 factors.
>
> [Caplan, 182 N.J. at 271.]

In such circumstances, "a judge should not extrapolate above the threshold using the respective percentages of total combined net income." Isaacson v. Isaacson, 348 N.J. Super. 560, 581 (App. Div. 2002). Rather, "the maximum amount provided for in the guidelines should be 'supplemented' by an additional award determined through application of the statutory factors in N.J.S.A. 2A:34-23(a)." Ibid.

Here the judge found the parties' combined net income was $212,888, and therefore, a supplemental award was appropriate. In accordance with the guidelines, the judge determined that child support should be $251 per week. Based on the $25,688 excess net income above the guidelines, the judge decided

that plaintiff should pay for M.W.'s vehicle, car insurance, extracurricular activities, and summer enrichment, including summer camps.

We conclude that the judge properly recalculated plaintiff's child support obligation. It is clear that the parties' combined income levels exceed the maximum child support guidelines, and the judge supplemented the support amount by applying the statutory factors in N.J.S.A. 2A:34-23(a). Once again, the judge adhered to the proper procedure, and engaged in a detailed analysis of the statutory factors. Notably, the supplemental child support awarded was consistent with plaintiff's prior custom in respect of the children and in accordance with his financial wherewithal. We are unable to discern any abuse of discretion.

## III.

Finally, plaintiff argues that the judge improperly failed to comply with Rule 1:7-4 in awarding 100% of the counsel fees requested by defendant in the amount of $102,911.28 based upon post-hearing submissions by counsel. Specifically, plaintiff asserts that the judge did not analyze the factors provided in the court rules and failed to take into consideration the invoices submitted by defendant or prior orders entered by preceding judges and incorrectly applied

A-2884-19

the "loser pays rule" rather than the "American rule" in shifting fees to plaintiff. The counsel fee decision was based upon post-hearing submissions by counsel.

Rule 4:42-9(a)(1) provides that "[i]n a family action, a fee allowance . . . may be made pursuant to [Rule] 5:3-5(c)." Rule 5:3-5(c) sets forth nine factors for the court to consider in determining a fee allowance:

(1) the financial circumstances of the parties;

(2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;

(3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;

(4) the extent of the fees incurred by both parties;

(5) any fees previously awarded;

(6) the amount of fees previously paid to counsel by each party;

(7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

Our Supreme Court distilled these factors to their essence by explaining:

[T]he court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or

defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.

[Mani v. Mani, 183 N.J. 70, 94-95 (2005) (emphasis deleted) (citing Williams v. Williams, 59 N.J. 229, 233 (1971)).]

The decision whether to grant attorney's fees in a family action lies within the discretion of the trial judge. R. 5:3-5(c); Addesa v. Addesa, 392 N.J. Super. 58, 78 (App. Div. 2007). That determination will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Here, plaintiff's argument that the judge failed to analyze the factors set forth in Rule 5:3-5(c) is without merit. Judge Ferrelli found plaintiff "filed and relentlessly pursued the October 2014 [m]otion in bad faith throughout the proceedings leading up to and through the [p]lenary [h]earing in this matter." The judge highlighted that plaintiff's application to be designated as the PPR of the children and for modification of the parenting schedule to be shared on a fifty-fifty percentage basis, which was later withdrawn, not only demonstrated a "pattern of bad faith," but "disingenuous conduct calculated to mislead the [c]ourt and prolong the litigation." And the judge emphasized that plaintiff's position prohibiting the court from utilizing the expert reports as direct

testimony was "virtually nonsensical under applicable law and basic concepts of judicial economy."

Based upon our review of the record, we find that the judge's decision to award counsel fees to defendant was an appropriate exercise of discretion. The judge thoroughly analyzed and explained his reasoning under each of the factors listed in Rule 5:3-5(c). Contrary to plaintiff's argument, the judge considered the lengthy, post-judgment aspect of the case, the manner in which the custody and parenting time issues were resolved, plaintiff's pursuit of an increase in parenting time by less than a dozen nights each year, and the parties' abilities to pay their counsel fees. Consequently, we decline to disturb the judge's fee award.

We find plaintiff's remaining arguments wholly unsupported by the record and without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2884-19