**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2904-21

PATRICIA ENRIGHT HOWARD,

    Plaintiff-Respondent,

v.

TODD LEWIS HOWARD,

    Defendant-Appellant.

_____

Submitted October 10, 2024 – Decided October 18, 2024

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1062-14.

Kearns Rotolo Law, attorneys for appellant (Charles C. Rifici, on the brief).

Atkins, Tafuri, Minassian, D'Amato, Beane & Miller, PA, attorneys for respondent (Robert J. Tafuri and Stacey L. Miller, on the brief).

PER CURIAM

Defendant Todd Lewis Howard appeals from: an October 1, 2021 order denying his motion to modify the alimony he pays plaintiff Patricia Enright Howard; an April 29, 2022 order denying his motion for reconsideration and awarding plaintiff counsel fees; an August 23, 2022 order granting him a stay, contingent upon posting a supersedeas bond to cover his alimony arrears and a second bond to guarantee his ongoing alimony obligations pending appeal; and a May 12, 2023 order denying his motion to vacate the August 2022 order, granting plaintiff's motion to enforce the parties' marital settlement agreement (MSA) requiring the parties to exchange financial documentation, and awarding her counsel fees. We affirm in part, and reverse and remand in part, for the reasons expressed in this opinion.

Following a more than three-decade marriage, the parties entered an MSA, which stipulated they would arbitrate the outstanding issues they could not resolve, including plaintiff's alimony claim. An arbitrator rendered awards on December 19 and 20, 2018, whose provisions were incorporated with the MSA, into the judgment of divorce.

Defendant was required to pay plaintiff open durational alimony structured into three tiers. The tier one alimony payment referred to as base alimony was $102,500 per year. According to the MSA, "[t]ier [o]ne [a]limony

shall be based on [defendant]'s income up to $400,000[] per year and, therefore, said alimony is based on [defendant]'s first $400,000[] of earned income a year."

The December 20 award further provided as follows:

> [Plaintiff] is currently not employed, but the parties have agreed to add together an imputation of earned income to her of $40,000[] from employment and an imputed investment income (unearned income) return of $60,000[] on her inherited immune assets to arrive at the $100,000[] total income imputation figure for [plaintiff].
>
> Only [plaintiff]'s combined income in excess of $100,000[] per year, from earnings through employment and/or investment income returned on her inherited immune assets, will have any further impact on the alimony. Therefore, [plaintiff] having income of up to $100,000[] per year from these two sources shall not be considered a change in circumstances for purposes of modifying the alimony.

The MSA defined the tier two alimony as "[a]dditional [a]limony." The December 20 award explained the tier two alimony would be based on defendant's "income between $400,001[] to $1,000,000[,] and [plaintiff]'s total income in excess of $100,000[] per year, from earnings through employment and/or investment income on her inherited immune assets." The additional alimony would be "[t]hirty-three percent . . . of the difference between [defendant]'s gross annual income . . . in excess of $400,000[], up to

$1,000,000[], less the gross annual income of [plaintiff] . . . in excess of $100,000[] per year." The award defined "gross annual income" to

> include such income as shall be reported on W-2 or cash distributions set forth on a Schedule K-1 . . . and 1099s. It shall include all cash (base and bonus, if applicable), the value of all vested and/or unrestricted equities . . . and deferred compensation when said compensation is taxed, for each calendar year. It shall also include any and all income from any sources, including investment income and any realized capital gains from inherited assets. Annual [e]arned [i]ncome shall not include assets or income related to assets which were subject to equitable distribution . . . .

The tier three alimony was comprised of payments defendant had been receiving from an executive retirement plan, which the MSA treated as equitable distribution and was excluded from gross annual income. The amounts and percentages paid under this tier are not relevant to the issues raised on this appeal. The MSA excluded "any income earned by either party from their investment of their share of marital assets from equitable distribution . . . from 'gross annual income'" for purposes of calculating alimony.

The December 20 award required the parties to exchange year end paystubs for as long as alimony was payable and exchange "all tax reporting documents[,]" namely the W-2s, K-1s, and 1099s referenced in the paragraph defining gross annual income. Elsewhere in the award, it required the parties to

4

annually exchange: W-2 forms; "any and all documentation from their employment that shows their compensation for the prior year"; tax returns; "any and all additional financial information of any nature whatsoever"—to confirm that "the appropriate amount of alimony was paid for the prior year, including but not limited to 1099s and any other tax reporting documents; investments, retirement and bank account statements; and accounting for real estate rental income and expenses;" and quarterly paycheck statements.

The MSA stipulated neither party waived

> any rights they may have . . . to a modification as to both the base and additional alimony based upon . . . Lepis v. Lepis, 83 N.J. 139 (1980) with the exception that [plaintiff] waives a right to make an application to increase alimony in the event [defendant] has earned or unearned income in excess of $1,000,000[].

The parties also agreed the Lepis change in circumstances standard would not apply to the tier three alimony.

The December 20 award contained the following language under the tier three alimony heading: "In the event there is a dispute as to the amount [of alimony], [defendant] . . . shall, at the very least, pay that part of the amount that is not in dispute." Moreover, "[e]ither party may proceed immediately with an application to the [c]ourt. The [c]ourt shall have the discretion to determine if

interest and/or penalties are due or if one party should pay the counsel fees of the other."

Motion practice ensued in August 2020 with plaintiff moving to enforce alimony and defendant cross-moving to modify or suspend his obligation. Defendant certified he was terminated from his position as senior executive and received a five-month severance beginning in May 2019. He claimed his 2019 income, including the severance, was $281,012.21. Although his 2019 W-2 showed earnings totaling $323,279.49, he asserted his earnings were overstated because they included Medicare wages, which he alleged the court previously found was not income.[1]

In November 2019, defendant began new employment, earning an annual salary of approximately $225,000. His 2019 W-2 from the new employer showed earnings totaling $34,615.38.

In March 2020, defendant was laid off again due to the COVID-19 pandemic and began receiving unemployment benefits. He certified he applied to different positions. Because he was unsure if he could return to his field of work, he studied software and took an insurance agent/broker course. He

---

[1] The appellate record contains no such finding by the trial court.

A-2904-21

claimed he could not achieve his prior earnings capacity due to his age and because his "entire industry was decimated by the lockdowns and shutdowns[,]" resulting in greater competition for fewer jobs.

In November 2020, defendant began a new, commission-based job. He claimed the new position was comparable to his prior employment as a senior executive at the time the parties entered into the MSA, and the pay structure offered the potential for income far greater than prior earnings. Defendant did not earn a commission in 2020. His 2020 tax return showed a gross earned income of $198,834.

Defendant did not earn a commission until late 2021. His October 19, 2021 case information statement (CIS) certified he was paid an $83,000 commission quarterly or $332,000 per year. The CIS listed an average gross weekly income of $3,953.85 or $205,600 per year.

In 2022, defendant began a new position with a different company. His employment agreement listed an annual salary of $290,000. Defendant's 2022 W-2 showed earnings totaling $126,979.10.

In 2018, plaintiff had income from her inherited assets totaling $40,905.56. This sum was comprised of $32,125.94 in realized gains from

A-2904-21

various trust accounts, and $8,779.63 in net rental income from her twenty-five percent interest in an inherited property in Virginia.

In 2019, plaintiff began working for a management company. Her total income that year was $42,657.04, comprised of W-2 earnings of $9,615.30 and $33,041.74 in income from her inherited assets.

In 2020, plaintiff's income totaled $75,279.77, comprised of an earned income of $50,433.87, and $24,845.90 from inherited assets. Her 2021 income totaled $74,910.27, including an earned income of $52,023.02 and $26,387.25 from inherited assets.

In June 2021, defendant moved for a downward modification of his alimony obligation based on a change in his circumstances. He also argued plaintiff's income should include the unrealized income from her equitable distribution, which would increase her income and operate to decrease alimony.

Defendant submitted the certification of a forensic accountant who reviewed the parties' finances. The accountant averred that plaintiff's income should include her unrealized capital gains because plaintiff controlled her investment accounts and could determine when to sell a security. This would put her income over the imputation threshold and lower the alimony. The

accountant also questioned if plaintiff's Virginia property was being rented at the market rate.

Plaintiff opposed the motion and filed a cross-motion to enforce defendant's alimony obligation and arrears. She submitted a certification from her accountant certifying that her analysis of plaintiff's 2021 records yielded similar numbers as plaintiff had represented to the court, namely, that plaintiff had a total combined income of $78,410. Although the accountant did not verify plaintiff's rental expenses, she certified she "review[ed] invoices and bank statements evidencing many of the expenses paid."

On October 1, 2021, the motion judge filed an order denying defendant's motion to modify alimony and granting plaintiff's cross-motion. The judge found defendant did not suffer either a permanent or significant change in income and failed to demonstrate any efforts to find remunerative employment. He also rejected defendant's claim that plaintiff's income should include unrealized gains because the arbitration order did not include this category of income for purposes of the alimony calculation.

Defendant moved for reconsideration, and plaintiff filed an opposition and again cross-moved for enforcement. On April 29, 2022, the motion judge entered an order denying the reconsideration motion. The judge granted plaintiff

9

attorney's fees and costs for the motion. Defendant appealed from the October 2021 and April 2022 orders.

In May 2022, plaintiff moved to enforce defendant's alimony obligation and sought a judgment against him in the amount of $236,935.13, reflecting the arrears accrued as of May 27, 2022. Defendant opposed the motion and cross-moved for a stay of the October 2021 and April 2022 orders.

On August 5, 2022, the motion judge granted the stay contingent on defendant posting a supersedeas bond in the amount of $232,992.83, representing the current alimony arrears amount. Defendant posted the bond on August 19, 2022. The judge then clarified the bond only stayed defendant's obligation to pay alimony arrears, and that he must post a second supersedeas bond to stay his ongoing alimony obligation. On August 23, 2022, the judge entered an order memorializing this finding, and directing defendant to post a second supersedeas bond in the amount of $153,570, to stay his ongoing alimony obligation. The judge calculated this amount based on eighteen months of alimony he projected defendant would pay until we adjudicated his appeal. Defendant amended his notice of appeal to include the August 23 order.

In January 2023, defendant moved to vacate or stay the August 23 order pending the outcome of the appeal. Plaintiff opposed the motion and cross-

moved to compel financial discovery, counsel fees and costs, and other relief. On May 12, 2023, the motion judge denied defendant's motion and granted plaintiff's request for discovery in part and her request for attorney's fees. Defendant amended his notice of appeal to include the May 2023 order.

Defendant moved to stay the May 2023 order. On August 25, 2023, the motion judge denied the motion. We denied defendant's motion to amend the notice of appeal again, to include the August 2023 order.

I.

As a general proposition, "we accord great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009)). This is "[b]ecause of the family courts' special jurisdiction and expertise in family matters . . . ." Cesare v. Cesare, 154 N.J. 394, 413 (1998). We defer to factual findings "supported by adequate, substantial, credible evidence" in the record. Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare, 154 N.J. at 411-12). "Reversal is warranted only when . . . the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]'" Reese v. Weis, 430 N.J. Super. 552, 567 (App. Div. 2013)

(quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)) (alteration in original). Conversely, we review questions of law and the Family Part's legal rulings de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

## II. Alimony

### A.

Defendant argues the motion judge erred when he denied his motion to modify alimony on account of the decrease in his income. He claims plaintiff acknowledged the change in circumstances and the court should have recalculated his alimony obligation retroactive to: September 2019 when his severance expired; November 2019 when he began his new position; and March 2020 when he was laid-off from the new position. Defendant asserts the judge imputed an income to him that he could no longer earn and incorrectly calculated his income by annualizing his 2019 earnings. The judge also erred by faulting him for finding employment albeit at a lower earnings rate, applied the wrong legal standard in assessing his request to modify alimony, and erred when he failed to take judicial notice of the effects of the pandemic on his earnings.

It is well known that an alimony award may be reviewed and modified if either party experiences a substantial change in financial circumstances. Reese,

430 N.J. Super. at 569 (citing Lepis, 83 N.J. at 146). N.J.S.A. 2A:34-23(k) lists ten factors a court should consider when a non-self-employed party seeks modification of alimony.

The motion judge denied defendant's motions to modify and for reconsideration[2] because defendant's changes in employment and income were not prima facie evidence of a substantial change in circumstances. The judge found: defendant failed to demonstrate that he was involuntarily underemployed or unemployed; the circumstances were temporary in nature; and the 2019 change in income was not substantial. We discern no reversible error in these rulings.

"[P]rima facie evidence is defined as 'evidence that, if unrebutted, would sustain a judgment in the proponent's favor.'" Cardali v. Cardali, 255 N.J. 85, 109 (2023) (quoting Baures v. Lewis, 167 N.J. 91, 118 (2001), overruled on other grounds by Bisbing v. Bisbing, 230 N.J. 309, 328-36 (2017)). This requires a court to examine a party's claims "with an appreciation that if supported by competent evidence they would establish a prima facie cause of action." Conforti v. Guliadis, 128 N.J. 318, 328 (1992).

---

[2] We do not address the order denying reconsideration because defendant has not briefed it. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

A-2904-21

Where a party seeks a downward modification of alimony due to the loss of income, a court must consider the reasons for a party's loss of income. N.J.S.A. 2A:34-23(k)(1). If the income loss is due to unemployment or underemployment, the court must consider whether the supporting party made good faith efforts to obtain either replacement or alternative employment. N.J.S.A. 2A:34-23(k)(3). A court may consider the party's efforts to find commensurate employment to determine whether their decreased salary constitutes a change in circumstances, or whether the court should impute income to that party based on their prior earnings. Dorfman v. Dorfman, 315 N.J. Super. 511, 516-17 (App. Div. 1998). By showing their attempts to find commensurate employment, the supporting spouse can "demonstrate[] that [they are] working at a capacity in employment consistent with skills and experience" and not "voluntarily underemployed in the new job." Storey v. Storey, 373 N.J. Super. 464, 472 (App. Div. 2004) (citing Dorfman, 315 N.J. Super. at 516-17).

In Dorfman, we concluded the supporting spouse had established a change in circumstances warranting modification where he lost his job, made concerted efforts to find the same work at comparable pay, and eventually accepted a lower paying position. 315 N.J. Super. at 517. In Storey, we held the supporting spouse was not entitled to modification based on his career change from a

14

computer technician to a massage therapist, which resulted in a significant reduction in income, because of his failure to offer "any credible reason" for declining to pursue other areas of employment, and his limited job search efforts when he lost his prior position. 373 N.J. Super. at 469, 475-77.

We have imputed income to the supporting spouse where there is no career change, but their new, lower salary is inconsistent with their earning capacity. See, e.g., Gormley v. Gormley, 462 N.J. Super. 433, 446-47 (App. Div. 2009) (concluding that the trial court did not properly assess the supporting spouse's earning capacity when determining his support obligation, in a proceeding where the supporting spouse's commission income had decreased); Elrom v. Elrom, 439 N.J. Super. 424, 437-38 (App. Div. 2015) (finding no error in imputing income to the supporting spouse for child support purposes where his claimed salary was less than his prior earnings and did not reflect his income from other sources).

The motion judge found defendant lacked a basis to modify alimony because he failed to justify the periods of unemployment and underemployment when he accepted a decreased salary, then remained unemployed in 2020, and then accepted a lesser position when he regained employment. Our review of the record confirms the judge's findings defendant offered no proof or details

15

about his job search efforts to demonstrate that he was involuntarily unemployed and involuntarily underemployed during his periods of unemployment. Defendant did not submit a log of his job searches or identify the number of job applications he submitted. He provided no proof to corroborate the claim that his options were limited by the fact there were no positions commensurate with his prior position or earning capacity. He presented insufficient facts to permit the judge to assess the reasonableness of his employment decisions.

The motion judge declined to take judicial notice of the economic impact of the COVID-19 pandemic, reasoning he could not "take judicial notice of a certain industry" and defendant had failed to demonstrate how the pandemic had impacted his earning capacity. "Our review of the trial court's evidential rulings 'is limited to examining the decision for abuse of discretion.'" Ehrlich v. Sorokin, 451 N.J. Super. 119, 128 (App. Div. 2017) (quoting Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div. 2015)).

Pursuant to N.J.R.E. 201(b), the motion judge could not take judicial notice of facts reasonably subject to dispute. Rice v. Miller, 455 N.J. Super. 90, 102 (App. Div. 2018). The record lacked specific information about how the pandemic impacted defendant or his industry, and the parties disputed whether

there was such an impact. Therefore, the judge did not err when he declined to take judicial notice of the pandemic as a reason to modify alimony.

The motion judge also correctly declined to retroactively modify alimony for defendant's periods of temporary unemployment. Defendant was unemployed for two months in 2019 and six months in 2020. N.J.S.A. 2A:34-23(k) permits courts to consider "the length of time a party has been involuntarily unemployed or has had an involuntary reduction in income"—although the statute notes this should not be the court's only consideration. The statute limits a party from seeking modification until they are either unemployed or unable to find employment at prior income levels "for a period of [ninety] days." Ibid. But this does not mean that a period of unemployment greater than ninety days, as defendant experienced here, constitutes an automatic basis for finding a change in circumstances.

There is no "brightline rule by which to measure when a changed circumstance has endured long enough to warrant a modification of a support obligation[,]" because the determination is discretionary and based on the totality of the circumstances. Larbig v. Larbig, 384 N.J. Super. 17, 22-23 (2006). We discern no abuse of discretion in the judge's finding the periods of unemployment were temporary.

A-2904-21

Alimony is an economic right designed to provide "the dependent spouse with 'a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage.'" Mani v. Mani, 183 N.J. 70, 80 (2005) (quoting Stiffler v. Stiffler, 304 N.J. Super. 96, 99 (Ch. Div. 1997)). These goals cannot be realized by subjecting support to every fluctuation in the supporting spouse's income, especially where, as here, there was a long-term marriage and the post-judgment motion practice commenced shortly after the divorce.

Accordingly, Family Part judges account for income fluctuations and whether they meet the substantial change in circumstances standard by measuring that party's income against their earning capacity. The tools available to judges to analyze a party's income, include income imputation or averaging income across periods of time. See Platt v. Platt, 384 N.J. Super. 418, 426-27 (App. Div. 2006) (sanctioning a five-year income averaging for alimony purposes).

For these reasons, defendant's assertion the judge erred by annualizing his income lacks merit. Defendant was unemployed for just two months in 2019. The judge's finding that the 2019 earnings of $357,904.87, as compared with the

$400,000 in the MSA, did not constitute a substantial change in circumstances and was not an abuse of discretion.

Moreover, defendant's CIS listed assets totaling over $3,000,000 with which to pay alimony. See Miller v. Miller, 160 N.J. 408, 422 (1999) (recognizing that a supporting spouse's assets may be considered when calculating alimony). Under these circumstances, the less than eleven percent decrease in defendant's income did not warrant a modification of alimony.

B.

Defendant argues alimony should have been modified based on the increase in plaintiff's earned income over the $40,000 imputed to her in the MSA. He alleges the motion judge erred by excluding plaintiff's unrealized capital gains from her inheritance income. If the judge had calculated plaintiff's income correctly, it would have exceeded the $100,000 imputed to her in the MSA and led to a downward modification because she had less need for the alimony. He asserts the judge should have granted him discovery to assess plaintiff's need for continued alimony.

"'Imputation of income is a discretionary matter not capable of precise or exact determination[,] but rather [requires] a trial judge to realistically appraise capacity to earn and job availability.'" Elrom, 439 N.J. Super. at 434 (citations

omitted) (first alteration in original). According to the MSA, alimony was based on an imputed income of $40,000 from employment and $60,000 from investments. The December 20 order memorialized the arbitrator's decision that "gross annual income" was "any and all income from any sources, including investment income and any realized capital gains from inherited assets." (emphasis added).

The motion judge "categorically reject[ed] the idea that unrealized income should somehow be added to the income of . . . plaintiff . . . ." We decline to disturb this finding because the terms of the December 20, 2018 order are clear and the law of the case.

Defendant points to a provision in the December 20 order, that states gross annual income "shall also include any and all income from any sources, including investment income and any realized gains from inherited assets." (emphasis added). He argues the underscored language includes plaintiff's unrealized gains. We are unpersuaded.

"The participle including typically indicates a partial list[.]" Black's Law Dictionary, (12th ed. 2024) (WEST). Our Supreme Court has stated: "In interpreting non-exhaustive lists . . . courts may apply a canon of statutory interpretation known as ejusdem generis, which literally means 'of the same

kind.'" Williams v. N.J. State Parole Bd., 255 N.J. 36, 53 (2023) (quoting Norman J. Singer & J.D. Shambie Singer, 2A Sutherland Statutory Construction § 47:17, at 364-86 (7th ed. 2022)).

Defendant's interpretation of this language ignores the fact that the phrase "any and all income from any sources" is then delimited by the word "including," which is then followed by "investment income and any realized capital gains from inherited assets" as to what is considered a source of gross annual income. If we adopted defendant's interpretation, it would render "investment income and any realized gains from inherited assets" meaningless. Unrealized and realized capital gains are not "of the same kind." Ibid. Moreover, defining income as limited to realized gains from inherited assets is sensible not only under the facts of this case, but also considering that "only gains that are actually realized are considered income for taxation purposes." Miller, 160 N.J. at 421.

The motion judge correctly found defendant was not entitled to a modification of alimony on account of plaintiff's income because it never exceeded the $100,000 combined imputed amount in the MSA. Defendant's assertion that we should interpret the MSA and the December 20 order to mean that if plaintiff earned more than $40,000 from employment, he would be entitled to a modification, lacks merit. The December 20 order clearly stated:

21

[T]he parties have agreed <u>to add together</u> an imputation of earned income to [plaintiff] of $40,000[] from employment and an imputed investment income (unearned income) return of $60,000[] on her inherited immune assets to arrive at the $100,000[] total income imputation figure for [plaintiff].

Only [plaintiff]'s <u>combined income in excess of $100,000[] per year</u>, from earnings through employment and/or investment income returned on her inherited immune assets, <u>will have any further impact on the alimony. Therefore, [plaintiff] having income of up to $100,000[] per year from these two sources shall not be considered a change in circumstances for purposes of modifying the alimony</u>.

(emphasis added.)

The plain language of the December 20 order makes it clear there is no individual threshold on the amount of earned and unearned income imputed to plaintiff. Rather, the intended threshold is the combined total of both sources of income and whether it exceeds $100,000.

Because plaintiff's income never exceeded the $100,000, her need for the alimony did not decrease. Defendant was not entitled to discovery because he did not make a prima facie showing of a change in circumstances based on plaintiff's earnings. <u>Cardali</u>, 255 N.J. at 101 (citing <u>Lepis</u>, 83 N.J. at 157).

Defendant contends the motion judge erred by failing to find plaintiff conceded there was a change in circumstances. He points to numerous emails

between the parties, in which he sought an agreement to decrease his alimony obligation based on his change in income. He also highlights a statement from one of plaintiff's certifications, which stated she had been willing to temporarily modify defendant's alimony obligation because "[h]is circumstance changed in 2020 with his layoff due to [the pandemic] and now again with his new employment."

The MSA states: "No modification or waiver of any terms of this [a]greement shall be valid unless in writing and executed with the same formality as this [a]greement." Defendant claimed the parties had reached an agreement to modify alimony when he brought his first modification motion in September 2020. In the resultant order, which is not a part of this appeal, the judge found there was no formal modification agreement. Defendant abandoned this claim in his subsequent motions, which are the subject of this appeal, and during oral argument advised the judge he had accepted the finding there was no agreement to modify alimony.

The determination there was no alimony modification agreement is now res judicata. Moreover, we do not consider this argument because it was not raised in the proceedings that concern this appeal. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Even if plaintiff had made a concession in a

certification, it did not meet the MSA's requirement of a formal modification agreement required by the MSA.

C.

Defendant contends the judge should have enforced a provision in the December 20 order ("the disputed alimony provision") that required him to only pay the undisputed portion of alimony until the alimony modification dispute was resolved. He claims the provision applied to all three tiers of alimony.

After the motion judge denied defendant's modification and reconsideration motions, plaintiff moved to enforce alimony, and asked the court to enter a judgment against defendant in the amount of $236,935.13, reflecting the arrears accrued as of May 27, 2022. Defendant then cross-moved for a stay and argued he was only required to pay the undisputed alimony amounts.

Plaintiff asserted the provision defendant was relying upon only pertained to the tier two alimony. Even if the provision applied to tier one alimony, the judge had resolved the dispute by denying defendant's motions.

The motion judge found that if he adopted defendant's interpretation it would permit the suspension of alimony for an indefinite period while the appellate process proceeded, and would "bring[] about an absurd result." The judge reasoned Rule 1:10-3 granted him jurisdiction to enforce his orders, and

24

under Rule 2:9-5, he had the authority to stay his own order pending appeal. Therefore, rather than suspend defendant's obligation to pay, the judge conditioned the stay on defendant posting a supersedeas bond.

The disputed alimony provision resides under the subheading for tier three alimony. That level of alimony was already being paid to defendant as a part of his executive compensation and untethered to the vicissitudes of his earned income. This lends credence to defendant's claim the disputed alimony provision applied to the other alimony tiers, which are subject to fluctuations in the parties' incomes, and could give rise to disputes such as the ones in this appeal. Assuming arguendo, that the provision applied to all tiers of alimony, we nonetheless conclude the judge did not err when he concluded defendant could no longer invoke the provision after the court had adjudicated the alimony dispute.

Indeed, the provision contemplates defendant would pay the portion of alimony not in dispute until either party sought court intervention and the court resolved the dispute having the discretion to award "interest and/or penalties" on the unpaid alimony or counsel fees. The plain language of this provision does not permit defendant to withhold alimony pending appeal. Otherwise, it

A-2904-21

would have said so. The motion judge interpretated this provision sensibly. Defendant's interpretation would lead to absurd result.

### III. The stay and supersedeas bonds

Defendant contends the motion judge erred in requiring him to pay a second supersedeas bond to stay his ongoing alimony obligation. He claims the judge lacked jurisdiction to enter orders enforcing this obligation because: a supersedeas bond applies to judgments, not orders; the judge could not stay or modify his own orders once they were appealed; and the second bond constituted an improper modification of the judge's order because it was entered sua sponte, without either party having filed a motion. He also argues the second bond was in an excessive amount.

Defendant requested a stay pending appeal after plaintiff sought a judgment against him for the alimony arrears. At oral argument before the motion judge, defense counsel raised the issue of whether a bond was necessary for a stay. Defense counsel later suggested a bond was not appropriate because the judge had not entered a money judgment.

In his August 5, 2022 order, the motion judge concluded he had authority to stay his order subject to defendant posting a bond in the amount of the arrears. Thereafter, both attorneys wrote to the court disputing whether the bond stayed

A-2904-21

only the arrears, or if it included defendant's ongoing alimony obligation. Plaintiff urged the former and defendant the latter. According to defendant, the judge's order did not carve out any exceptions to the bond and it would be difficult to calculate the amount of a supersedeas bond to stay the ongoing alimony obligation, because it would lead to speculation about how long it would take to resolve the appeal.

The motion judge found that although the August 5, 2022 order stayed both the October 1, 2021, and April 29, 2022, orders, the bond amount only covered defendant's outstanding arrears. He explained the purpose of the bond was to protect plaintiff who had prevailed but could not collect because of the pending appeal, but he had overlooked the issue of the ongoing alimony payments. As a result, the judge conditioned the stay of the ongoing alimony obligation on the posting of a second supersedeas bond. Defense counsel objected, and argued the judge could not modify his order. The judge opined he was not modifying his order, but instead addressing something he overlooked.

On August 23, 2022, the motion judge reduced his ruling to an order, clarifying the purpose of each bond. The order further directed that if defendant failed to timely post the second bond, his ongoing alimony payments would resume.

27

Defendant moved to vacate or stay the August 23 order, reiterating the initial bond applied to his alimony arrears and ongoing alimony obligation. On May 12, 2023, the judge entered an order denying defendant's motion and extending the time for him to post the second bond. In his oral findings, the judge characterized the August 23 order as correcting a clerical mistake in the August 5 order. The May 12 order also modified the August orders by adding that if defendant failed to post the second bond not only would his ongoing alimony obligation resume, but he would also have to pay $25,000 to his arrears.

A trial court has discretion whether to grant a stay "dependent upon the equities of a given case." Avila v. Retailers & Mfrs. Distrib., 355 N.J. Super. 350, 354 (App. Div. 2002). We review a court's decision concerning a supersedeas bond for abuse of discretion. Grow Co. v. Chokshi, 403 N.J. Super. 443, 479 (App. Div. 2008).

Although the filing of a notice of appeal typically deprives a trial court of supervision and control of the proceeding, the trial court maintains authority to stay its own orders pending appeal. R. 2:9-1(a)(3). Moreover, Rule 2:9-1(a)(7) grants the trial court "continuing jurisdiction to enforce judgments and orders pursuant to R[ule] 1:10 . . . ." A trial court can also stay its own proceedings

pending appeal.  R. 2:9-5(b).  Rule 2:9-5(a) allows a stay of proceedings "with or without terms," and states:

> A judgment or order in a civil action adjudicating liability for a sum of money . . . which is the subject of an appeal . . . shall be stayed only upon the posting of a supersedeas bond or other form of security pursuant to R[ule] 2:9-6 . . . , unless the court otherwise orders after notice and on good cause shown.  Such posting or deposit may be ordered by the court as a condition for the stay of any other judgment or order in a civil action.

Rule 2:9-6 addresses the posting of a supersedeas bond.  It requires the bond amount to reflect the "judgment in full," together with interests and trial costs, unless the party shows "good cause" to approve a bond for a lesser amount, or to allow a different form of security.  R. 2:9-6(a)(1), (b).  The purpose of a supersedeas bond is to "protect the respondent from the loss of the use of funds otherwise immediately due."  Grow Co., 403 N.J. Super. at 478 (citing R. 2:9-5).

We reject the argument the motion judge could not require the posting of bond because he had entered an order and not a judgment.  Rule 2:9-5(a) applies to a judgment or an order.  Although Rule 2:9-6 only references judgments, it must be read in pari materia with Rule 2:9-5, which is the rule that authorizes the court to impose a bond requirement in the form prescribed by Rule 2:9-6.

However, we part ways with the motion judge's interpretation of Rule 2:9-5(a) as it applied to defendant's ongoing alimony obligation.  As we noted, the Rule requires a supersedeas bond to stay "[a] judgment or order in a civil action adjudicating liability for a sum of money . . . ."  The amount of the second bond was an educated guess about defendant's future obligation and not based on an order adjudicating the sum certain defendant owed plaintiff in alimony.

Inasmuch as the motion judge maintained the ability to enforce his own orders, if defendant continued not to pay alimony, the better practice would have been for plaintiff to seek enforcement pending the duration of this appeal by filing a motion certifying to the unpaid alimony, and the judge could then impose a bond on a sum certain due and owing to plaintiff.  For these reasons, we vacate the portion of the May 2022 order imposing the second supersedeas bond.

The August 23 order was also procedurally defective as to the second bond because the motion judge imposed new terms where neither party had moved for reconsideration of the August 5 order.  An essential component of the rules governing motion practice is "to afford the party against whom relief is sought notice of the application, together with a meaningful opportunity to respond." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001). This is also central to the constitutional right to due process, which "[a]t a

minimum, . . . requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (alteration in original) (quoting H.E.S. v. J.C.S., 175 N.J. 309, 321-22 (2003)).

A court cannot sua sponte "'shortcut' for the purposes of 'good administration' and circumvent[] the basic requirements of notice and opportunity to be heard." Klier, 337 N.J. Super. at 84-85. For these reasons, we cannot concur with the motion judge's ruling the August 23 order was correcting a clerical mistake. A clerical mistake is one which corrects "an obvious or acknowledged error . . . ." McNair v. McNair, 332 N.J. Super. 195, 199 (App. Div. 2000). The August 5 order stayed both the alimony arrears and the ongoing alimony but did not distinguish between these obligations when the court imposed the first bond. The August 23 order imposed an entirely new financial obligation without affording either party the required due process.

Because we have found the second bond was flawed in purporting to secure an obligation not yet incurred, it matters not that defendant was eventually afforded due process when he later moved to vacate the second bond because the process was flawed from the start. And because we have vacated

31

the second bond, we do not reach defendant's argument regarding the court's refusal to reduce the second bond amount.

It follows from this discussion that the portion of the May 12 order requiring that defendant either post the second bond or resume paying alimony and $25,000 to arrears should be vacated as well. This provision was not part of the August 5 and August 23 orders, and it modified the stay imposed in the August orders, which defendant had already appealed from.

To summarize, it is axiomatic the judge had jurisdiction to stay and enforce his own orders pending appeal, including by imposing a bond requirement on the alimony arrears. The judge erred in imposing the second supersedeas bond because it secured alimony yet to be incurred and was imposed without adequate notice to the parties and then modified the stay to require defendant to pay $25,000 towards arrears. The portion of the August 23 order pertaining to the second bond and the May 12 order are reversed. Defendant's remaining arguments regarding the August and May 2022 orders lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

## IV.  Discovery

Defendant contends we should reverse provisions in the May 12 order, which required him to turn over financial documentation related to a limited

liability corporation (LLC) and the sale of real property he received in equitable distribution. He claims because the LLC was created from his equitable distribution and the real property was his equitable distribution both are excluded from disclosure because they are not included in calculating his income for alimony purposes.

The May 12 order was the result of plaintiff's motion to enforce the arbitration award's requirement that the parties exchange financial documentation each year. Plaintiff claimed defendant formed the LLC in May 2019, but never disclosed this to her or the court. She contended she was entitled to this information to determine defendant's total gross income.

Defendant claimed the LLC was an "unprofitable entity" that he formed, which "never got off the ground." Further, the LLC was started with his equitable distribution funds, which the MSA excluded as income for alimony purposes. There was also no MSA or arbitration award that required him to give documentation related to the sale of the property.

The May 12 order granted plaintiff's request for "the sales reports, commission reports, balance sheet, and detailed analysis showing the economic and non-economic benefits [d]efendant receives or received from" the LLC. The

33

order also directed him to provide plaintiff with documentation regarding the sale of the real property.

We are constrained to reverse and remand this portion of the May 12 order because the motion judge made no findings as to why he granted the relief. We cannot discern what impelled the judge to require the disclosure of this information and why he apparently rejected defendant's assertion that it had no bearing on his income for purposes of calculating alimony. On remand, the judge should explain why this information should be disclosed despite the MSA and arbitration award excluding it from consideration as income for alimony.

## V. Counsel fees

Defendant challenges the award of counsel fees to plaintiff in the April 29, 2022 order. He also challenges the May 12, 2023 fee award.

The April 29 order awarded plaintiff fees when the motion judge denied defendant's motion for reconsideration of the October 1 order that denied the request to modify alimony. The judge determined defendant had the ability to contribute towards plaintiff's counsel fees. He found defendant acted in bad faith by making repeated requests without "any substantive evidence or proof" to support his application, "despite previous warnings from the [c]ourt . . . that the proof is needed for . . . defendant to bring a future application." The judge

also noted he had denied the "vast majority of . . . [d]efendant's requests for relief . . . ."

The fees awarded in the May 12 order compensated plaintiff for responding to defendant's motion to vacate or stay the August 23 order. The motion judge cited an MSA provision that "the defaulting party will indemnify the other for any . . . reasonable expenses and costs, including attorney's fees, incurred in successfully enforcing this [a]greement." The judge again found defendant had the ability to contribute to plaintiff's counsel fees and had acted in bad faith by failing to comply with the August 23 order and seeking to vacate or stay it. He found plaintiff had successfully moved to enforce the MSA and arbitration order provisions requiring the parties to exchange financial information, and the motion practice could have been avoided were it not for defendant's refusal to comply.

Defendant argues both fee awards were erroneous because the motion judge did not have an updated CIS or financial information from plaintiff to discern her ability to pay her own fees. Plaintiff's attorney filed a late certification of services in connection with both awards, leaving defendant inadequate time and opportunity to review and address the certification. The judge's bad faith findings were also erroneous because defendant had only filed

35 <span></span>

four motions (two for modification and two for reconsideration), and his reconsideration motion was meritorious because it was based on newly discovered evidence.

Rule 5:3-5(c), in connection with Rule 4:42-9, authorizes the Family Part to award counsel fees to either party in an alimony proceeding. Both Rules set forth factors for the Family Part to consider in deciding a counsel fee award. As a result, an award "of counsel fees is discretionary, and will not be reversed except upon a showing of an abuse of discretion." Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (citation omitted).

We are satisfied the April 29 counsel fee award was not an abuse of discretion. The motion judge had sufficient financial information from both parties to consider the need for contribution to counsel fees and the ability to pay. We decline to second-guess the judge's weighing of the parties' reasonableness and good faith; plaintiff clearly prevailed and was entitled to an award of fees. Indeed, the judge noted he had denied defendant's initial modification motion due to insufficient proofs, and—despite having three more chances to do so—defendant failed to present additional evidence to support his claims and was unsuccessful in almost all of his requests for relief.

We reach a different conclusion regarding the May 12 fee award. That order was predicated in part on the judge having found plaintiff prevailed in enforcement of the parties' obligations to exchange financial documentation. However, we have reversed that part of the order because there was a lack of findings whether defendant was required to disclose the LLC and real property sale records under the MSA. For these reasons, the May 12 counsel fee award and is remanded for reconsideration along with the discovery issue discussed in section IV of this opinion. Due to the passage of time, the parties should provide the motion judge with updated CISs to enable him to better understand their financial circumstances if he decides to award counsel fees after deciding the discovery dispute.

## VI.

Finally, to the extent we have not addressed an argument raised by defendant on appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

37

A-2904-21